ROBERT B. SYKES (#3180)
    bob@sykesinjurylaw.com
ALYSON CARTER McALLISTER (#9886)
    alyson@sykesinjurylaw.com
RACHEL L. SYKES (#11778)
    rachel@sykesinjurylaw.com
**SYKES McALLISTER LAW OFFICES, PLLC**
311 South State Street, Suite 240
Salt Lake City, Utah  84111
Telephone (801) 533-0222
Facsimile (801) 533-8081

RICHARD T. WILLIAMS (#9115)
    rich@arplegal.com
**ALLEN PACE LAW, P.C.**
2550 Washington Blvd., Suite 300
Ogden, Utah 84401
Telephone (801) 393-9600
Facsimile (801) 399-4194

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | | |
|---|---|---|
| KRISTINE BIGGS JOHNSON, | ) | |
| | ) | |
| | ) | **FIRST AMENDED** |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| vs. | ) | |
| | ) | |
| DANIEL PEAY, a Morgan County | ) | Civil No. 1:14-cv-147-TC |
| Sheriff's Sergeant, MORGAN | ) | |
| COUNTY, a Political Subdivision; | ) | |
| and JOHN and JANE DOES 1-10, | ) | Judge Tena Campbell |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff complains and alleges causes of action against Defendants as

follows:

## PRELIMINARY STATEMENT

The following allegations are based upon the undersigned's understanding of information presently available.  This is a civil rights action in which the Plaintiff seeks relief for the Defendants' violations of her rights guaranteed by the United States Constitution, specifically the Fourth, Fifth and/or Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988.  This action also seeks relief under the Constitution of the State of Utah, Article I, Sections 1, 7, 9, 14, and 25.  This is further an action at law to redress grievances under the laws, statutes, and Constitution of the State of Utah.

## JURISDICTION AND VENUE

1.      This action arises under the United States Constitution and federal law, particularly under the provisions of the Fourth, Fifth, Eighth, and/or Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983, 1985, and 1988.

2.      This action also arises under the Constitution of the State of Utah, Article I, Sections 1, 7, 9, 14, and 25.

3.     This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

4.     As to the State Constitutional claims, this Court's supplemental jurisdiction is invoked under 28 U.S.C. § 1367.

5.     The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Northern Division.  Venue for the federal claims is therefore proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1331. Venue for the State claims is proper under 28 U.S.C. § 1367.

6.     Plaintiff is seeking damages under federal and state law pursuant to the claims for relief specified below, and in amounts specified below.

7.     This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988, and pursuant to the Court's inherent power under State law.

8.     This Court also has jurisdiction over the State claims Plaintiff has brought, pursuant to 28 U.S.C. § 1367.

## PARTIES

9.     Plaintiff **Kristine Biggs Johnson** ("Ms. Johnson") is a citizen of the United States of America and a resident of Sonoma County, State of California.

10.     At all relevant times herein, Defendant **Morgan County** was the employer, operator, and/or administrator of the Morgan County Sheriff's Office (MCSO), and was a political subdivision organized and existing under the laws of the State of Utah.

11.     **Blaine Breshears,** who is not sued personally, is the duly elected Sheriff of Morgan County.  Breshears was Sheriff at the time these events arose.

12.     The MCSO is a division or department of Morgan County.

13.     The Morgan County Sheriff is an elected official of Morgan County.

14.     Plaintiff is suing the MCSO and Morgan County in their official capacity.

15.     At all relevant times herein, Defendant **Daniel Peay** ("Peay") was a Sergeant with the MCSO, operating in the course and scope of his employment, and under the color and guise of the laws of the State of Utah.

16.     Plaintiff is suing Peay in his individual capacity.

17.     Plaintiff is also suing Peay in his official capacity as an agent and deputy of the MCSO, which in effect is suing the MCSO.

18.     The specific identities of Defendants **John and Jane Does 1-10** are presently unknown to Plaintiff, but upon positive identification will be properly served with process, and their individual names will be added to this Complaint in accordance with the applicable federal rules. Plaintiff is suing said **Doe Defendants** in their individual and official capacities.

19.     Plaintiff denies that notice is required of her State claims in this Complaint since such Utah constitutional mandates and decrees are self-executing, and therefore state law notice of such claims is not required.  If notice is, or has been, given, it is done as a precaution and an avoidance of unnecessary argument.

## FACTUAL ALLEGATIONS

20.     On November 24, 2012, at approximately 10:00 p.m., a Morgan County Deputy attempted to pull over Ms. Johnson for a minor vehicular equipment infraction (headlight out).

21.     Ms. Johnson was driving west-bound on I-84 in Morgan County.

22.    Ms. Johnson did not heed the deputy's lights and siren, and a vehicular pursuit ensued.

23.    A part of the pursuit was at speeds below the speed limit.

24.    At one point during the pursuit, police put tire-rippers on the road, which completely ripped off three of Ms. Johnson's tires.

25.    At approximately 700 East Cottonwood, Ms. Johnson attempted to turn her vehicle around and continue to flee the pursuing officers.

26.    This was a cul-de-sac, or street without an outlet, such that there was no way for Ms. Johnson to escape if police vehicles blocked the only egress.

27.    Several pursuing officers, with their vehicles, blocked any possibility of exit by Ms. Johnson's car.

28.    At least three (3) or more police vehicles blocked Ms. Johnson from completing a U-turn and escaping.

29.    While on East Cottonwood Street, Ms. Johnson drove her truck and struck a police vehicle near where Sgt. Peay was standing.

30.    This collision occurred in the front of this police vehicle.

31.    At the time of collision, Peay was off to the right of the police vehicle that was struck.

32.    This collision occurred at a very low speed, about 1-3 mph.

33.    Peay was not in any immediate danger from this collision due to his position, i.e., he was off to the side and protected by other vehicles.

34.    Ms. Johnson then backed up, with the intent of driving between two of the officers' vehicles to continue her flight.

35.    Ms. Johnson then turned her vehicle slightly to her left in preparation for coming forward again.

36.    However, a third police vehicle then drove up and blocked this path, as shown on the dash-cam video, making it completely impossible for Ms. Johnson to escape.

37.    This series of events is depicted on the Youtube video at http://www.youtube.com/watch?v=ubvAiXq3DW4.  It can also be accessed via Google by searching for "Kristine Nicole Biggs Shooting Video Youtube."

38.    Sgt. Peay moved slightly to his left as Ms. Johnson came forward again.

39.    Ms. Johnson was barely moving as she came forward.

40.    Ms. Johnson came forward and struck the second police vehicle (that filled the gap) in the center of that vehicle.

41.    At the time of this second strike, and as recorded on an officer's dash-cam video, Sgt. Peay was standing off to the left side of Ms. Johnson's line of travel as she came forward.

42.    Peay was not in any immediate danger of being struck by Ms. Johnson's vehicle as she came forward the second time.

43.    Peay was not at immediate or imminent risk of serious bodily injury or death at this point.

44.    When Defendant Peay stood outside Ms. Johnson's vehicle, as discussed above, the only knowledge he had about Ms. Johnson was what had been reported on dispatch.

45.    Defendant Peay, at the moment he fired, knew only that Ms. Johnson had been responsible for some traffic infractions.

46.    After a few seconds of watching Ms. Johnson vainly attempt to escape, and still at no immediate risk of death or serious bodily injury, Peay used deadly force on Ms. Johnson.

47.    Peay attempted to kill Ms. Johnson by firing his weapon at her head.

48.    Peay's actions were egregious.

49.    Peay's actions "shock the conscience" because they were intended to kill Ms. Johnson, and were not justified by any governmental interest.

50.    Peay fired one round from his handgun at Ms. Johnson's head, through the windshield of her vehicle, at a distance of 10-15 feet.

51.    The bullet struck Ms. Johnson in the left eye and exited from the left side of her face.

52.    This impact caused an "orbital blowout" to Ms. Johnson.

53.    Ms. Johnson thereby suffered a large-caliber gunshot wound to her eye and the left side of her face.

54.    The .40 caliber bullet entered Ms. Johnson's left eye, destroying it, and exited through her left upper cheek.

55.    Ms. Johnson has suffered greatly from this injury.

56.    Ms. Johnson sustained the complete loss of sight in her left eye from Peay's gunshot.

57.    The bullet wound caused the need for tens of thousands of dollars in reconstructive surgery, which is ongoing.

58.    The Sheriff sets the policy and provides training for deputies like Peay.

59.   **Morgan County,** and its agents, including the Sheriff and his deputies, are state actors and are responsible for the day-to-day running of the MCSO, as well as the policy-making, training, and supervision of the employees of MCSO.

60.   The MCSO does not, however, report to or take operational orders from Morgan County.

61.   The MCSO is funded by taxes levied by Morgan County.

62.   Among other things, the MCSO was responsible to properly and sufficiently train and supervise its employees and officers.

<u>**FIRST CAUSE OF ACTION**</u>

**EXCESSIVE DEADLY FORCE
IN VIOLATION OF THE FOURTH AMENDMENT**

**Against Sgt. Peay
In His Individual Capacity**

**~ Cognizable Under 42 U.S.C. § 1983 ~**

63.   Plaintiff incorporates by reference all above allegations.

64.   On November 24, 2012, Sgt. Peay utilized unreasonable, improper, unnecessary, and excessive deadly force on Ms. Johnson, resulting in severe injury and blindness in her left eye, among other things.

65.   Peay used deadly force against Ms. Johnson while she was attempting to flee from the officers who were pursuing her.

66.   At the time of Peay's use of deadly force against Ms. Johnson, as shown by the dash-cam video, Peay was standing off to the side of Ms. Johnson's vehicle.

67.   At the time Peay used the deadly force, he knew only that Ms. Johnson had committed one or more traffic offenses.

68.   Peay was not in any immediate threat of serious bodily injury or death from being struck by her vehicle.

69.   Nor were there any other immediate threats of serious bodily injury or death posed to others by Ms. Johnson at the time the deadly force was used.

70.   At the time of Peay's use of deadly force against Ms. Johnson, no other officer or any other person was in any immediate or imminent threat of serious bodily injury or death from being struck by her vehicle.

71.   Nor was any other other person in any other immediate or imminent threat of serious bodily injury or death posed by Ms. Johnson.

72.     Peay was operating in the course and scope of his employment as a Morgan County Sheriff's Sergeant, and under the color and guise of the laws of the State of Utah.

73.     During Peay's use-of-force training, he was or should have been provided with extensive information and written materials regarding the proper use of deadly force.

74.     Such materials and training warned or should have warned Peay that deadly force may only be used where there is an immediate threat of serious bodily injury or death to the officer or others.   "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S. Ct. 1694, 1701 (1985).

75.     Ms. Johnson had a fundamental and well-established right to be secure in her person, and a right not to be subjected to unreasonable force pursuant to the Fourth, Fifth, Eighth, and/or Fourteenth Amendments to the United States Constitution.

76.     The force utilized by Peay was deliberate, unreasonable, reckless, excessive, unnecessary, improper, dangerous, and unconstitutional.

77. The unreasonable, excessive, and dangerous deadly force used by Peay evidenced a reckless and deliberate indifference to the life, safety, and well-being of Ms. Johnson.

78. The unreasonable, excessive, and dangerous deadly force used by Peay violated the protections afforded to Ms. Johnson pursuant to the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, which prohibit unnecessary, unreasonable, and excessive force, as well as cruel and unusual punishments.

79. Peay's use of unreasonable, excessive, and dangerous deadly force on Ms. Johnson directly and proximately caused her severe injuries and blindness in her left eye, among other things.

80. Peay's actions constitute knowing and reckless conduct in disregard of the rights, health, well-being, and safety of Ms. Johnson, and warrant the imposition of punitive damages.

81. Ms. Johnson demands judgment against Peay for compensatory damages as may be shown at trial, for punitive damages as allowed by law, for costs and attorney fees pursuant to 42 U.S.C. § 1988, and for such further and other relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION

### DEPRIVATION OF LIFE AND LIBERTY WITHOUT DUE PROCESS, IN VIOLATION OF THE FIFTH AND/OR FOURTEENTH AMENDMENTS

**Against Peay in His Individual Capacity**

**~ Cognizable Under 42 U.S.C. § 1983 ~**

82.   Plaintiff incorporates by reference all above allegations.

83.   If, under the facts, Biggs is not deemed to have been "seized" under the *Graham* elements relating to the Fourth Amendment, and not deemed to be in custody, then Peay's actions deprived her of life, liberty and bodily integrity, as substantively guaranteed her under the Fifth and Fourteenth Amendments.

84.   The unreasonable, excessive, and dangerous deadly force used by Peay, which directly caused Ms. Johnson's injuries, as described above, deprived her of a liberty interest without due process of law, in violation of the Fifth and/or Fourteenth Amendments to the U.S. Constitution.

85.   Peay's actions manifested reckless and callous indifference to Ms. Johnson's clearly established constitutional rights, which prohibit punishment, or deprivation of rights, bodily integrity, safety and security, without due process of law.

86.    A reasonable police officer should have been aware of such rights.

87.    Peay was, or should have been, aware of such rights.

88.    Peay's use of unreasonable, excessive, and dangerous deadly force on Ms. Johnson directly and proximately caused her severe injuries and blindness in her left eye, among other things, as alleged herein.

89.    Ms. Johnson demands judgment against Peay for compensatory damages, for punitive damages, for costs and attorney fees, and such other relief as the jury may award, or as this Court deems just and proper.

## THIRD CAUSE OF ACTION

### UNLAWFUL OR DEFICIENT POLICIES, PROCEDURES, AND/OR PROTOCOLS

#### Against Morgan County
#### In Its Official Capacity

#### ~ Cognizable Under 42 U.S.C. § 1983 ~

90.    Plaintiffs incorporate by reference all above allegations.

91.    On November 24, 2012, as described above, Sgt. Peay utilized unreasonable, improper, unnecessary, and excessive deadly force on Ms. Johnson, resulting in severe injury and blindness in her left eye, among other things.

Specifically, Peay used deadly force against Ms. Johnson, as described above, while she was attempting to flee from the officers who were pursuing her.

92.     At all relevant times herein, Morgan County was the employer, operator, and/or administrator of the Morgan County Sheriff's Office.

93.     At all relevant times, Sheriff Breshears was the administrator of the MCSO, and was responsible to see that deputies were trained in the proper use of deadly force.

94.     Sheriff Breshears, Morgan County, and its agents are state actors and are responsible for the day-to-day running of the Sheriff's Office as well as the policy-making, training, and supervision of the employees of the Sheriff's Office.

95.     Among other things, Sheriff Breshears and Morgan County were responsible to properly and sufficiently train and supervise MCSO's deputies, including Sgt. Peay.

96.     It was foreseeable that Morgan County Sheriff's deputies would, on occasion, need to use deadly force against citizens.

97.     Sheriff Breshears and Morgan County had a duty to create, adopt, promulgate, implement, enforce, revise, and/or update lawful policies, procedures, and/or protocols on the use of deadly force intended to protect

citizens from an individual who presented a risk of immediate serious bodily injury or death to the officers or others.

98.   Sheriff Breshears and Morgan County knowingly and recklessly failed to create, adopt, promulgate, implement, enforce, revise, and/or update lawful policies, procedures, and/or protocols regarding the use of deadly force, specifically about when deadly force is permitted by law, and when it is not permitted.

99.   Sheriff Breshears and Morgan County's failure to create, adopt, promulgate, implement, revise, enforce, and/or update lawful policies, procedures, and/or protocols pertaining to the use of deadly force demonstrated a deliberate and reckless indifference to the safety, health, well-being, and the very lives of residents of Morgan County, and in particular, the life, safety, and well-being of Ms. Johnson.

100.   Sheriff Breshears and Morgan County's failure to create, adopt, promulgate, implement, enforce, revise, and/or update lawful policies, procedures, and/or protocols pertaining to the use of deadly force proximately caused Ms. Johnson's injuries and blindness, in that Sheriff Breshears and Morgan County's unlawful, deficient, or non-existent policies proximately caused Sgt. Peay to

heedlessly and illegally use unnecessary, excessive, and dangerous deadly force against Ms. Johnson, directly causing her injuries and blindness.

101. In view of the foreseeability that Morgan County deputies would occasionally encounter citizens against whom some level of force would be permitted, the above-described actions, or inactions, of Sheriff Breshears and Morgan County constitute willful and wanton misconduct in heedless disregard of the rights, health, well-being, and safety of Utah citizens, and of Ms. Johnson in particular. Such heedless disregard warrants the imposition of punitive damages.

102. Plaintiff demands judgment against Sheriff Breshears and Morgan County for compensatory damages, for punitive damages, for costs and attorney fees, and for such other relief as this Court deems just and proper, and as may be allowed by law.

## FOURTH CAUSE OF ACTION

### FAILURE TO TRAIN AND/OR SUPERVISE

**Against Morgan County
In Its Official Capacity**

**~ Cognizable Under 42 U.S.C. § 1983 ~**

103. Plaintiff incorporates by reference all above allegations.

**104.** On November 24, 2012, as described above, Sgt. Peay utilized unreasonable, improper, unnecessary, and excessive deadly force on Ms. Johnson, directly resulting in severe injury and blindness in her left eye, among other things.

**105.** Specifically, Peay used deadly force against Ms. Johnson, as described above, while she was attempting to flee from the officers who were pursuing her.

**106.** It was foreseeable that Morgan County deputies would, on occasion, need to detain or use deadly force against citizens who posed an immediate risk of serious bodily injury or death to officers or others.

**107.** Sheriff Breshears and Morgan County had a duty to fully and adequately train and supervise MCSO's deputies, and to enforce its policies, procedures, and/or protocols, if they existed, to abide by the U.S. Constitution, and to protect citizens, including Ms. Johnson, from unnecessary, serious, and foreseeable harm or death associated with the use of deadly force.

**108.** Sheriff Breshears and Morgan County knowingly and recklessly failed to adequately train and/or supervise MCSO's deputies and enforce its policies, procedures, and/or protocols, if they existed, regarding the use of deadly force.

109. Sheriff Breshears and Morgan County's failure to utilize and enforce MCSO's policies, procedures, and/or protocols, if they existed, and to train and supervise its officers in the lawful utilization of those policies, procedures, and/or protocols, if they existed, demonstrated a reckless indifference to the safety, health, well-being, and lives of residents of Utah County, and in particular, the safety and well-being of Ms. Johnson.

110. Sheriff Breshears and Morgan County's failure to fully and adequately train and supervise MCSO's deputies, and to enforce its policies, procedures, and/or protocols, if they existed, proximately caused Ms. Johnson's serious injuries, in that the lack of training, supervision, and/or education in the lawful application of deadly force proximally caused Peay to improperly and illegally use deadly force against Ms. Johnson that led directly to her serious injuries.

111. The actions, or inactions, of Sheriff Breshears and Morgan County, as described above, constitute willful, wanton, and heedless disregard for the rights, health, well-being, and safety of Utah citizens, including Ms. Johnson, and warrant the imposition of punitive damages.

112. The conduct described herein reflects a practice or custom informally and customarily condoned by Sheriff Breshears and Morgan County,

which practice or custom consists of arming police officers with deadly and dangerous weapons without providing proper training or supervision regarding their safe, reasonable, and appropriate use in situations that might require deadly force.

113.  Sheriff Breshears and Morgan County were knowingly and deliberately indifferent toward the proper training and supervision of MCSO's deputies, particularly in the appropriate use, or proscription on the use, of deadly force on citizens who are fleeing and who present no immediate danger of death or serious injury to its officers or others.

114.  Plaintiff demands judgment against Morgan County for compensatory damages, for punitive damages, for costs and attorney fees, and for such other relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION

### VIOLATION OF STATE CIVIL RIGHTS
### BROUGHT PURSUANT TO THE COURT'S SUPPLEMENTAL
### JURISDICTION UNDER 28 U.S.C.A. 1367(a)

### Against All Defendants

115.  Plaintiffs reallege and incorporate by reference each of the allegations contained in the above paragraphs.

116.   Defendants are individuals and entities who were acting under color of law throughout the duration of the events described above.

117.   As a result of the unreasonable, excessive, and dangerous deadly force used by Peay, as described with specificity above, Defendants violated Plaintiffs' rights secured by Article I, Section 7 of the Constitution of the State of Utah ("No person shall be deprived of life, liberty or property, without due process of law").

118.   Defendants' actions violated Ms. Johnson's right to be secure in her bodily integrity, a liberty interest, when deadly force was inflicted on her, even though she presented no immediate danger to Peay or to others.

119.   Article I, Section 9 states in relevant part: "Nor shall cruel and usual punishments be inflicted.  Persons arrested or imprisoned shall not be treated with unnecessary rigor."

120.   If Ms. Johnson was deemed to be under arrest when Peay fired the shot, the shooting was "unnecessary rigor" under Section 9.

121.   Article I, Section 14 states in relevant part: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated."

122.   Among other things, shooting Ms. Johnson in the head with intent to kill or seriously wound her was an unreasonable seizure, at a minimum.

123.   Article I, Section 25 states in relevant part: "This enumeration of rights shall not be construed to impair or deny others retained by the people."

124.   Among other "retained" rights, Ms. Johnson had the right not to have excessive deadly force used on her in violation of the State Statute, Utah Code Ann. § 76-2-404; and she had any other rights under Utah State Law.

125.   The notice provision of the Utah Governmental Immunity Act, as delineated in Utah Code Ann. §63G-7-401(2), does not apply to Ms. Johnson's State Constitutional claims because such claims are self executing.

126.   A Utah State constitutional provision is self executing:

> ... if it articulates a rule sufficient to give effect to the underlying rights and duties intended by the framers.  In other words, courts may give effect to a provision without implementing legislation if the framers intended the provision to have immediate effect and if "no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed ..."

*Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.,* 2000 UT 87, 16 P.3d 533, 535.

127.   These violations of Ms. Johnson's rights by Defendants are guaranteed by the Utah Constitution and other statutes and laws.

128.   Such violations of State constitutional provisions as set forth herein, entitle her to compensatory and punitive damages, injunctive relief, statutory civil penalties, and attorney's fees, as provided for by the laws and Constitution of Utah.

129.   As a direct and proximate result of the aforementioned conduct of Defendants, Ms. Johnson has suffered and will continue to suffer physical, emotional, and psychological distress and mental anguish, the nature and amount of which will be determined at trial.

130.   Defendants acted willfully and with a reckless disregard for Ms. Johnson's rights.   Ms. Johnson is therefore entitled to an award of punitive damages against Defendants for the purpose of punishing these Defendants and to deter them and others from such conduct in the future.

131.   Plaintiff is entitled to attorney fees under the inherent authority doctrine, as well as any other provisions of Utah Law that may be found to apply in this case.

132.   As a direct and proximate result of the aforementioned conduct of Defendants, and in addition to all damages set forth above, Plaintiff has suffered and will continue to suffer emotional and psychological distress and mental anguish, the exact nature and amount of which will be determined at trial.

**133.** Defendants acted willfully and with a reckless disregard for Ms. Johnson's rights.  Plaintiff is therefore entitled to an award of punitive damages against Defendants for the purpose of punishing these Defendants and to deter them and others from such conduct in the future.

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

**1.**   For general compensatory damages in an amount to be determined at trial;

**2.**   For special damages as are shown at trial;

**3.**   For punitive damages against Defendants as may be allowed by law;

**4.**   For pre-judgment interest on the damages assessed by the Court, as allowed by law;

**5.**   For Plaintiff's costs and reasonable attorney fees, pursuant to 42 U.S.C. 1988, and as otherwise may be allowed by Utah State or Federal law; and

**6.**   For such other and further relief as the Court deems just and proper.

DATED this 9th day of December, 2014.

**SYKES McALLISTER LAW OFFICES, PLLC**

 */s/ Robert B. Sykes*
ROBERT B. SYKES
ALYSON CARTER McALLISTER
RACHEL L. SYKES
*Attorneys for Plaintiff*