UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

_____

| | |
|---|---|
| KRISTINE BIGGS JOHNSON, | ) |
| | ) Case No. 1:14-cv-147 |
| Plaintiff, | ) |
| | ) Judge Tena Campbell |
| vs. | ) |
| | ) |
| DANIEL SCOTT PEAY, a Morgan County Sheriff's Sergeant, MORGAN COUNTY, a Political Subdivision; and JOHN and JANE DOES 1-10, | ) |
| | ) Videotaped Deposition of: |
| | ) **CHRISTIAN L. PEAY** |
| | ) |
| | ) |
| | ) |
| Respondents. | ) |

_____

December 2, 2015
10:30 a.m.

Location:  Sykes McAllister Law Offices
311 South State Street, Suite 240
Salt Lake City, Utah

Reporter:  Rashell Garcia

1

```
 1   counter.  And 11:04, Kristine has backed up and Scott Peay
 2   has stepped from this corner out a little bit toward the
 3   vehicle.  Do you see that?
 4        A.   Yes, I do.
 5        Q.   Okay.  Now, when he gave his interview to Davis
 6   County Attorney's Office two days later, he said he was not
 7   in danger, he thought you were but he wasn't.
 8             MS. KYTE:  Object to the form of the question.
 9   The testimony speaks for itself.
10        Q.   Did he ever tell you that?
11        A.   No.
12        Q.   Did he ever tell you he thought he was in
13   danger?
14        A.   No.
15        Q.   Okay.  And then I'm going to play it forward from
16   11:04.  And you'll see here the vehicle, the suspect vehicle
17   comes forward.  It doesn't strike Dingman but it strikes you.
18   Tell me if you agree with that.  And just prior to 11:0 --
19   about 11:0 -- it's hard to control this exactly, but about
20   11:06 or 7, he fires the bullet.  Watch this now.  Do you see
21   that bullet?
22        A.   Yes.
23        Q.   Do you see where Scott is standing?
24        A.   I do.
25        Q.   Do you think at the time that that bullet was
```

```
 1   fired, he was in imminent danger of death or serious bodily
 2   injury?
 3            MS. KYTE:  Object to the form of the question.
 4       Q.   Scott.  In your opinion.
 5       A.   I feel that Scott was not in danger at that
 6   time.
 7       Q.   Yeah.  Well you and the Davis County Attorney are
 8   in agreement.  Okay, so, now I'm going to play this again.
 9   I'd like to ask you -- now you're a police officer.  How long
10   had you been a police officer at the time?
11       A.   I'm not anymore.
12       Q.   How long were you at the time?
13       A.   Oh, starting in 2003.
14       Q.   2003.  So, by 2012, nine years, roughly, on the
15   force?
16       A.   Yeah.
17       Q.   Okay.  I'd like to ask you your estimate of the
18   speed of this vehicle as it comes forward.  Let me back up
19   here just a little bit.  Okay.  I'm going to play it from
20   11:00 on the counter to 11:08.  You tell me how fast it's
21   coming forward in your opinion, if you have an opinion.
22       A.   Could you replay that?
23       Q.   Huh?
24       A.   Could you replay that, please?
25       Q.   Sure.  Absolutely.
```

1  -- I'm going to go back to 4:11.  And we see the impact with
2  your car at -- your police vehicle at -- see that move
3  backward about 4:17?
4         A.    Yes.
5         Q.    Okay.  And it was just after that, I'll represent
6  to you, that the shot was fired.  Look where you're standing
7  here.  Do you see where you're standing?
8         A.    Yes.
9         Q.    Are you in imminent danger of death or serious
10 bodily injury at that point?
11        A.    No.
12        Q.    Okay.  All right.  And we're looking at, for the
13 record, 4:17 to 4:19; right?
14        A.    Yes, that's correct.
15        Q.    At any time that night before the shot was fired,
16 were you in imminent danger of death or serious bodily
17 injury?
18        A.    No.
19        Q.    Now, let me ask a few questions about the day
20 after this event.  Now this is the twenty --
21        A.    See, I can't remember which month it was.  I know
22 it was in wintertime.
23        Q.    Yes, it was November.  It was November 25, 2012,
24 Sunday night.
25        A.    Yeah, I remember it was a Sunday.

24