Robert B. Sykes (#3180)
Alyson E. Carter (#9886)
Rachel L. Sykes (11778)
SYKES | MCALLISTER LAW OFFICES, PLLC
311 South State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
bob@sykemcallisterlaw.com
alyson@sykesmcallisterlaw.com
rachel@sykesmcallisterlaw.com

Richard T. Williams (#9115)
ALLEN PACE LAW, P.C.
2550 Washington Blvd., Suite 300
Ogden, Utah 84401
Telephone No. (801) 393-9600
rich@arplegal.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| KRISTINE BIGGS JOHNSON, | **PLAINTIFFS' RULE 26 DESIGNATION OF EXPERT WITNESS** |
| Plaintiff, | **(B. Kent Morgan)** |
| vs. | Civil No. 1:14-cv-147-TC |
| DANIEL SCOTT PEAY, a Morgan County Sheriff's Sergeant, MORGAN COUNTY, a Political Subdivision; and JOHN and JANE DOES 1-10, | Judge Tena Campbell<br>Magistrate Judge Brooke C. Wells |
| Defendants. | |

Plaintiffs, through counsel and pursuant to Rule 26(a)(2), F.R.Civ.P., designate and disclose B. Kent Morgan as an expert witness as follows:

**RETAINED EXPERT**

**B. Kent Morgan**, 975 West 850 South, Woods Cross, Utah 84087, 801.397.1780. Mr. Morgan is expected to testify regarding excessive deadly force used by Scott Peay on or about November 25, 2012. A copy of his report, with his expected opinions, a summary of the facts and data considered by him in forming his opinion, a list of his publications in the last 10 years, his fee schedule, and a list of all cases in which he testified within the last 4 years are all attached hereto as Exhibit 1, along with a copy of his CV.

DATED this 15th day of January, 2016.

          */s/ Robert B. Sykes*
          ROBERT B. SYKES
          RICHARD T. WILLIAMS
          *Attorneys for Plaintiff*

160115.Expert Desig.Morgan.wpd

# EXHIBIT 1

B. Kent Morgan
975 West 850 South
Centerville, UT 84014
Phone: (801) 397-1780
morgan@mnalaw.net


15 January 2016

Robert B. Sykes
Sykes McAllister Law Offices
311 South State Street, Suite 240
Salt Lake City, Utah 84111

Re: Report on Kristine Biggs v. Christian Peay, Civil No. 1:14-cv-147

Dear Mr. Sykes:

You have retained me as an expert witness to testify about my opinions regarding the improper use of deadly force in a shooting that occurred on November 25, 2012. This report constitutes my opinions and findings.

**I. My Background and Experience in Training Law Enforcement and Determining Whether Police Shootings Were Justified.**

      I have been practicing criminal law for the past 34 years.  For 28 of those years I was employed as a prosecutor.  I began my prosecution career as an Assistant City Attorney for Sandy City from 1982 to 1984.   I then became employed as an Assistant District Attorney for the Salt Lake County District Attorney's Office, until I retired in March of 2010 as an Assistant Chief District Attorney. My experience, beginning in the Sandy City Attorney's Office and throughout my employment in District Attorney's Office, included prosecution of a variety of misdemeanor cases and escalated into the prosecution of more serious felony matters such as arson and fraud cases, burglaries, armed robberies, narcotics violations, habitual criminals and a number of high profile homicide cases. During the last ten years of my career as a prosecutor, I took to trial and obtained convictions on 7 different capital homicide cases, several of which resulted in the death penalty.

      Along with my prosecution responsibilities, I was assigned the duties of supervising teams of lawyers in the Justice Division.  Upon being designated as an Assistant Chief District Attorney, from about 2000 to 2010, I was given the task of managing over 30 lawyers and support staff assigned to the newly-constructed West Jordan Branch of the District Attorney's Office.  My day-to-day duties required me to

cooperate with corresponding civil counterparts in the District Attorney's Office specifically with regard to liability issues of law enforcement officers.

Among my duties as an Assistant Chief of the District Attorney's Office, I was responsible for reviewing police shootings to determine whether or not they should be subject to criminal prosecution. During that time, I reviewed dozens of police shooting cases. As a result, I was required to know and understand the law enforcement standards under which police officers operate with respect to the use of potentially deadly force, in addition to understanding the laws of Utah and the United States of America with respect to the use of deadly force and related issues. My duties also encompassed training and updating both law enforcement and prosecutors on the development of this area of the law.

Although I have not published more than articles and teaching handouts over the past ten years, I wrote the Fourth and Fifth Editions of the Utah Prosecutor Handbook and its updates from 1995 through 2006. I also composed a manuscript entitled, "An Introduction to the Law of Evidence" while teaching law students and paralegals at the same time. While employed at the Sandy City Attorney's Office, I developed and published the first government DUI manual, designed to assist the police and prosecutors statewide in Utah in implementing and administrating DUI programs.

**II. The Issue.**
The issue in this matter is: Did Sgt. Scott Peay improperly use deadly force against Kristine Biggs on November 25, 2012 at approximately 10:15 p.m., when he shot his service revolver at her head and hit her in the eye? The answer to this issue is that Sgt. Peay was not confronted by deadly force, or any other circumstances that would justify the use of deadly force, and therefore, he improperly used deadly force against Ms. Biggs. The following constitutes my justification.

**III. Materials Reviewed.**

Depositions. I reviewed the depositions of the following: Kristine Biggs Jonson, Sandy Carnahan, Todd Christensen, Kevin Edwards, Todd Hardman, Brian Marley, Al Muir, John Scott Meyers, Chad Nicholls, Cheryl Ogle, Eric Prescott, Scott Peay, and Christian Peay.

Disclosures and Deposition Exhibits. The Defendants provided several sets of Disclosures. I reviewed the documents and records which they provided. I also reviewed the deposition exhibits which included police records, reports, investigation narratives, and interviews; medical and psychiatric documents; and insurance invoices.
Medical Records. I reviewed briefly Ms. Biggs' medical records, some of which report statements that she allegedly made.

Davis County Investigative Report. Davis County did an extensive investigation on this that culminated with the issuing of a report by Davis County Attorney Troy Rawlins. I reviewed

all of these materials, including a lengthy interview between the Davis County investigator and Scott Peay. Of particular interest was the report of Troy Rawlings, dated January 22, 2013, wherein he finds that the shooting was not justified.
Criminal History. I reviewed Ms. Biggs' criminal history of over a period of several years, most of which was included in the depositions exhibits.

Dashcam Videos. There were about six dashcam videos, some of which were not very helpful because they didn't show the shooting. I reviewed three of the six, those which showed the incident most directly, and between them, recorded the incident from beginning to end.

EMT Records. I reviewed the EMT records, as well as the depositions of two EMTs that came to the scene to treat and transport Kristine Biggs.

**IV. Opinions.**

1. Improper Use of Deadly Force. The use of deadly force under these circumstances was improper. Sgt. Peay used deadly force on Kristine Biggs by firing his handgun at her through the front windshield of her vehicle with the bullet striking her in the face and destroying her left eye. Police training provided by myself and other authorities to officers at that time was in accord with Utah statutes and the binding precedent of the United States and Utah Supreme Courts. The law makes it clear that the failure to comply with directions of law enforcement or anticipation of flight or pursuit of an individual in the process of committing a crime is not a justification for using deadly force against that individual who presents no immediate threat of imminent death or serious bodily harm to the officer or others immediately present.

I have watched the videos of this shooting originating from the several dashcam videos that were available. The most pertinent video was that originating from Officer Dingman. There is no objective evidence presented that either Sgt. Peay, or any of the other law enforcement officers were in immediate danger. On the contrary, the video shows that Sgt. Peay steps forward and aims his weapon at the driver of a vehicle that was moving very slow while all other officers refrained from attempting to use deadly force, and indicated no fear of danger presented by the driver of the vehicle. When the shot was fired, there is no force much less flight circumstances that would justify the shooting of Ms. Biggs.

2. Slight Contact, Not In Zone of Danger. The video provides a view of Ms. Biggs doing a 3-point turn, pointing the front end of her truck a little bit more to Sgt. Peay's right (or south on the compass) and coming forward again at a very low rate of speed, perhaps 2-3 mph, and barely striking the vehicle that was just to the south of Sgt. Peay's vehicle, which happened to be the vehicle driven by Deputy Christian Peay, Sgt. Peay's brother. The vehicle makes a very slight contact, again, with this second police vehicle at 2-3 mph, and then stops. Less than a second after the vehicle stops, Sgt. Peay, off to the left or

north, and outside any reasonable zone of danger, fires his service weapon directly at Ms. Biggs' head. He struck her in the left eye, destroying the eye and the eye socket and rendering her totally blind on that side. Sgt. Peay was in no danger when he fired his service weapon at Ms. Biggs.

3. Claim That Christian Peay Was In Danger. About 3 days later, Sgt. Peay was interviewed by a Davis County Attorney's Office investigator. Sgt. Peay seemed to claim at that time that he initially felt he was in danger, but that he didn't fire, even though he was allegedly in danger. He then states that the reason he fired was that he thought his brother, Deputy Christian Peay, was in danger. He knew that Christian Peay was off to Sgt. Peay's right, and thought he might have been exposed. That became his sole justification for firing his service weapon and severely injuring Kristine Biggs.

4. Subjective Feeling Christian Peay Was In Danger Not Enough. This stated reason is not a valid reason for using deadly force, by the standards under which the police operate. Under those standards, an "objective" officer must believe that there is an immediate risk of death or serious bodily injury to himself or to others. Scott Peay testified in his deposition, and gave an under oath statement to the Davis County Attorney, that he was not in danger at the time he fired. He also testified that he didn't know exactly where his brother was, but simply thought it was possible he might be in danger. That doesn't meet the standard of appropriate police conduct in these circumstances. There was no objective indication that Christian Peay was in danger. It was simply a subjective feeling by Scott Peay. A subjective feeling like that is not sufficient to justify deadly force. If it were, there would be chaos on the streets. If an officer walked up to a car he had pulled over and somehow had a subjective feeling that person was armed and going to shoot him, he would be justified in shooting first and asking questions later. He could merely claim that he subjectively feared for his life, even though there was no objective basis for it. That would cause a lot of unwarranted deaths. Scott Peay's subjective believe that his brother might be in danger is simply not sufficient, under current police standards, to justify the use of deadly force. That use was completely and totally improper in this case.

5. Suicide by Cop. I read in some of the depositions questions asked about whether Kristine Biggs was trying to commit "suicide by cop." My opinion on that is simply that it is irrelevant to whatever a police officer does. The police officer must act with reasonable objectivity. There is no way that Sgt. Scott Peay knew anything about Kristine Biggs' history or motives. He simply did not know her, so he could not have known if she was trying to commit suicide, even if that were the case.

6. Suicide Motive Does Not Justify Deadly Force. Furthermore, it would be improper for an officer to "oblige" a potential suicide victim by shooting that person. Even if a person is trying to commit suicide by cop, that does not justify, objectively and reasonably, the use of deadly force. Once again, there must be an immediate risk of death or serious bodily injury to the police officer or to another. This is true even if the person is trying to commit suicide.

7. <u>There Are No Objective Signs or Indicia that Suggest that Ms. Bigg's had any Motive Consistent with that Sgt. Peay's Assumptions</u>.  Additionally, on this issue, it would be impossible to know what Kristine's motives were at the time. She was quite inebriated and probably had only a dim knowledge, if that, of her own motives.

8. <u>Christian Peay Not Endangered</u>. Christian Peay was deposed, and he made it very clear that neither "Scott" Peay nor himself were in danger based upon where they were standing. He made this very clear on pages 20-24 of his deposition.

9. <u>Conflicting Statements by Christian Peay and Perhaps Others</u>. At Christian Peay's deposition, the defense attorney put forth several statements and/or emails by Christian Peay that purported to say, in effect, that he and Scott were both worried for their lives that night. I have been asked to address and explain my opinion on this. These types of statements fall under the category of "the thin blue line," of which I am very familiar. By that, I mean that I have seen many times where officers "exaggerate" the facts and things that happened in order to protect another officer. It is my opinion that is what is was occurring here. I base this on the video, rather than on the "thin blue line" statements made by Christian Peay that night and early the next morning. The video is much more important evidence because it is objective, not subjective. I can't say for sure what Christian Peay's exact motives were when he wrote the various things presented at his deposition, but it is abundantly clear that neither he nor his brother were in any danger, and he admitted this at his deposition.

**V. Compensation.** I charge $250 an hour for my expert witness opinions, and $500 an hour for actual testimony.

**VI. Conclusion.** This is a shooting that never should have occurred. Sgt. Scott Peay used deadly force completely outside of the rules and conventions that applied to police officers at the time, and still do. There was no reason to shoot Kristine Biggs during this incident. No one was in danger. She had really nowhere to go, her vehicle could have been easily disabled, and she could have been removed from the vehicle and arrested without the resort to deadly force.

Sincerely and respectfully,
/s/ B. Kent Morgan
B. Kent Morgan