# EXHIBIT "C"

## "Deposition Of Jeffrey Dingman"

### (cited pages only)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

---

| | |
|---|---|
| KRISTINE BIGGS JOHNSON, | ) |
| | ) Case No. 1:14-cv-147 |
| Plaintiff, | ) |
| | ) Judge Tena Campbell |
| vs. | ) |
| | ) |
| DANIEL SCOTT PEAY, a Morgan County Sheriff's Sergeant, MORGAN COUNTY, a Political Subdivision; and JOHN and JANE DOES 1-10, | ) |
| | ) Videotaped Deposition of: |
| | ) **JEFFREY DINGMAN** |
| | ) |
| | ) |
| | ) |
| Respondents. | ) |

---

December 2, 2015
9:05 a.m.

Location: Sykes McAllister Law Offices
311 South State Street, Suite 240
Salt Lake City, Utah

Reporter: Rashell Garcia

1

# APPEARANCES

For the plaintiffs:      ROBERT B. SYKES
                         Attorney at Law
                         SYKES MCALLISTER LAW
                              OFFICES, PLLC
                         311 So. State
                         Suite 240
                         Salt Lake City, UT 84111
                         (801) 533-0222
                         bob@sykesinjurylaw.com

For the defendants:      JULIA D. KYTE
                         Attorney at Law
                         STIRBA
                         215 South State, Suite 750
                         Salt Lake City, UT 84111
                         (801) 364-8300
                         jkyte@stirba.com

# INDEX

Witness                                                      Page

**JEFFREY DINGMAN**

Examination by Mr. Sykes                                       3
Examination by Ms. Kyte                                       40

```
 1   December 2, 2015                                    9:05 a.m.
 2                        P R O C E E D I N G S
 3                           JEFFREY DINGMAN,
 4   called as a witness, by and on behalf of the plaintiff,
 5   having been first duly sworn, was examined and testified as
 6   follows:
 7                             EXAMINATION
 8   BY MR. SYKES:
 9        Q.    First of all, Officer Dingman, thank you for
10   coming.  I appreciate that.  I know that these kinds of
11   things aren't always convenient for people, and so we do
12   appreciate it.
13              Let me just tell you what the case is about in
14   case you don't know.  There was a shooting about three years
15   ago.  What was the name of that road again?  Not --
16              MS. KYTE:  Cottonwood.
17        Q.    Cottonwood Lane down there.  It's in your
18   jurisdiction, I think.  And our claim is that it was
19   excessive force.  Officer Scott -- or deputy -- Sergeant
20   Scott Peay from the Morgan County Sheriff's Office was the
21   shooter.  And we're trying to find out facts and what may
22   have been observed and said by people that were there.
23              You're about the last -- we have one more guy
24   coming in after you.  I think that's about it.  We have taken
25   a bunch of depositions.  So, we're mostly interested to hear
```

3

1     Q.    Do you remember anybody saying that it was
2  justified?
3     A.    I don't.
4     Q.    Okay. Let me ask you, based on your memory of
5  that night, and hopefully being refreshed a little bit by the
6  video here, is there any way aside from driving off and
7  through a fence and into a field that Ms. Biggs could have
8  escaped going west, or was she completely blocked off?
9     A.    I'm sure there's a way. It's always possible.
10    Q.    But practically speaking, was she blocked off
11 from the west?
12    A.    Was she completely blocked off?
13    Q.    Yeah.
14    A.    I would say no.
15    Q.    Where could she have gone?
16    A.    She could have pushed vehicles. She could have
17 gone through the fence. She could have gone down the other
18 side of the shoulder, which was quite a bit wider, I believe.
19    Q.    Weren't there cars there blocking her too?
20    A.    I know that there was multiple vehicles that
21 could have positioned to try and block her.
22    Q.    How many -- at the time of the shooting, how many
23 police vehicles do you think were on the scene west of the
24 suspect vehicle?
25    A.    Oh, I would guess there was probably five to six.

26

```
 1   practical matter -- now I'll represent to you that three of
 2   her four tires were completely ripped off.
 3        A.   Okay.
 4        Q.   Or gone.  No rubber at all.  The fourth one, I'm
 5   not sure if it was flat or just had rubber still on it, but
 6   there was rubber on the fourth rim.
 7        A.   Okay.
 8        Q.   Could a vehicle like that with only rims, three
 9   rims -- is that capable of pushing another vehicle out of the
10   way, do you think?
11        A.   I think it's possible, sure.
12        Q.   You think it's possible.  At any point in time --
13   you know, we were looking at the time roughly from 10:50 to
14   11:08.  I think the shot was fired at 11:07.  But during that
15   roughly 17 seconds or so when she was doing the three-point
16   turn and coming forward and hitting the first police vehicle
17   and the second police vehicle, did you believe that your life
18   was in imminent danger at that time?
19        A.   Any time there's a police pursuit, I believe
20   that.
21        Q.   As a general principle?
22        A.   Correct.
23        Q.   But how about at this specific point in time?
24   Not what the risk was, you know, a minute or two before but
25   at this point in time when she's doing that turn and coming
```

```
 1   forward and striking the first police vehicle -- were you
 2   still in your vehicle?
 3        A.   I was.
 4        Q.   Okay.  Do you think your life was in imminent
 5   danger at that time?  At that moment?
 6        A.   Sure.
 7        Q.   Why?
 8        A.   Well, due to the fact that that's a very large
 9   vehicle and it's heading towards me.
10        Q.   But there are two other vehicles that are
11   blocking its potential impact with you; right?
12        A.   Well, that's where I placed my vehicle is in that
13   spot.
14        Q.   Behind a little bit.  Yours wasn't impacted at
15   all?
16        A.   No.
17        Q.   So, just based upon that and the speed she was
18   going, is it your belief that you were in imminent danger of
19   serious bodily injury or death at that point in time,
20   really?
21        A.   It's a possibility.
22        Q.   It's a possibility?
23        A.   Absolutely.
24        Q.   Okay.  Tell me how that could have occurred
25   possibly --
```

```
 1                MS. KYTE:  Object to the form of the question.
 2        Q.   -- under those circumstances?
 3        A.   If that vehicle struck my vehicle and pushed it
 4   into me, it could have knocked me down and crushed me.
 5        Q.   So if you were out of your vehicle, had she made
 6   impact on you, on your vehicle, it could have pushed the
 7   vehicle in such a way that it would have knocked you over
 8   perhaps and crushed you?
 9        A.   Yes, there's a possibility.
10        Q.   At five miles an hour?
11        A.   Correct.
12        Q.   Did it appear to you that Sergeant Peay's life
13   was in imminent danger?
14        A.   Well, just looking at the video, there was
15   definitely danger to him.
16        Q.   How would that have been?
17        A.   Well, there's that large vehicle coming at him.
18   If they were to have collided with him --
19        Q.   Wasn't he off to the side?
20        A.   Yeah, he was off to the side and in from of it.
21               MS. KYTE:  Object to the form of the question.
22        Q.   Do you remember the point in time where he --
23   there was a corner of his vehicle, back corner, and he was
24   back by the back corner.  Do you remember that?  And then he
25   walked out in front of the vehicle and to the left.  Do you
```

```
 1        A.    Yes.
 2        Q.    Okay.  And you see the suspect vehicle in the
 3   background.  And then Christian Peay gets out; right?
 4        A.    I don't know who that is.
 5        Q.    Assuming it's him?
 6        A.    If that is Christian, yeah, he gets out.
 7        Q.    He has his duty weapon pointed at the vehicle.
 8   And at 4:14, she begins to come forward again.  Do you see
 9   that?
10        A.    Okay.
11        Q.    Okay?  In your opinion, is Christian Peay in this
12   video in any imminent danger of death or serious bodily
13   injury where he's positioned?
14        A.    Sure.  If that vehicle pushes through there,
15   absolutely.
16        Q.    Okay.  So, if the vehicle pushes through, do you
17   think that's a reasonable possibility under these
18   circumstances?
19              MS. KYTE:  Object to the form of the question.
20        A.    That --
21        Q.    That that suspect vehicle could push through
22   those two police cars that are --
23        A.    Yeah, that's possible.
24        Q.    Possible.  Okay.  Do you think at five miles an
25   hour, Christian might not be able to get out of the way?
```