# EXHIBIT "F"

# "Deposition Of Todd Hardman"

# (cited pages only)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| KRISTINE BIGGS JOHNSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DANIEL SCOTT PEAY, a ) <br> Morgan County Sheriff's ) <br> Sergeant, MORGAN COUNTY, a ) <br> Political Subdivision; and ) <br> JOHN and JANE DOES 1-10, ) <br> ) <br> Defendants. ) | Civil No. <br> 1:14-cv-147 <br><br> **Deposition of:** <br><br> **TODD HARDMAN** |

**October 22, 2015**
3:41 p.m.

Location:  Sykes McAllister Law Offices
311 South State Street, Suite 240
Salt Lake City, UT  84111

*Reporter:  Teri Hansen Cronenwett*
*Certified Realtime Reporter, Registered Merit Reporter*

*Johnson v. Peay * Depo of TODD HARDMAN * 10-22-15*

# A P P E A R A N C E S

For the Plaintiff:      Robert B. Sykes
                              SYKES MCALLISTER LAW OFFICES, PLLC
                              311 S. State Street, Suite 240
                              Salt Lake City, UT  84111
                              (801) 533-0222
                              bob@sykesinjurylaw.com

For the Defendants:     Julia D. Kyte
                              STIRBA, P.C.
                              215 South State Street
                              Suite 750
                              Post Office Box 810
                              Salt Lake City, UT 84110
                              (801) 364-8300
                              (801) 364-8355 fax
                              jkyte@stirba.com

# I N D E X

| Witness | Page |
|---|---|
| TODD HARDMAN | |
|     Examination by Mr. Sykes | 3 |
|     Examination by Ms. Kyte | 28 |

2

*Teri Hansen Cronenwett, CRR, RMR*
*Garcia & Love Court Reporting & Videography*

*Johnson v. Peay * Depo of TODD HARDMAN * 10-22-15*

```
 1   October 22, 2015                              3:41 p.m.
 2                        P R O C E E D I N G S
 3                            TODD HARDMAN,
 4   called as a witness at the instance of the plaintiff,
 5   having been first duly sworn, was examined and testified
 6   as follows:
 7                            EXAMINATION
 8   BY MR. SYKES:
 9        Q.   Okay.  Is it officer or deputy?
10        A.   It's sergeant.
11        Q.   Sergeant.  Okay.  There you go.  None of the
12   above.  Tell us your name and -- your full name and
13   address?
14        A.   It's Todd Hardman.  My work address is 31 --
15   or I'm sorry.  3950 Adams Avenue.
16        Q.   Okay.
17             COURT REPORTER:  Adam's Avenue?
18        A.   Yes.
19        Q.   (By Mr. Sykes)  And you're a South Ogden
20   police officer, right?
21        A.   Correct.
22        Q.   Were you the same on November 25, 2012?
23        A.   Yes.
24        Q.   Okay.  Were you a sergeant then too?
25        A.   Yes.
```

3

*Johnson v. Peay * Depo of TODD HARDMAN * 10-22-15*

```
 1  been fired under the circumstances.
 2          MS. KYTE:  Object to the form of the question.
 3  Mischaracterizes his testimony.
 4          MR. SYKES:  That does not mischaracterize it
 5  at all.
 6     Q.   (By Mr. Sykes)  So, have you ever heard that
 7  about this incident?
 8     A.   No.
 9     Q.   Okay.  You didn't -- did you see enough of it
10  to tell us whether you think the shot should have been
11  fired or not?
12     A.   I wasn't in his shoes.  So I --
13     Q.   Okay.
14     A.   -- you know, I can't say what he was thinking
15  at that moment in time.  But having reviewed things
16  shortly afterwards, I believe I'd have made the same
17  decision he did.
18     Q.   Okay.  So even though he -- we deposed him,
19  too, Scott Peay.  He said he was off to the side, and
20  not in any danger.
21          MS. KYTE:  Object to the form of the --
22     A.   Well --
23          MS. KYTE:  -- question.  Mischaracterizing his
24  testimony.
25          MR. SYKES:  Go ahead.  Exactly what he said.
```

15

*Teri Hansen Cronenwett, CRR, RMR*
*Garcia & Love Court Reporting & Videography*

*Johnson v. Peay * Depo of TODD HARDMAN * 10-22-15*

```
 1        MS. KYTE:  You can go ahead.  You can go ahead
 2   and answer.  Once my objection or Mr. Sykes' objection
 3   is made, you can go ahead and answer if you can.
 4        A.   Again, I wasn't in his shoes, and I can't say
 5   what he was seeing or thinking or feeling at the time.
 6   But having reviewed the evidence, the videos from not
 7   only my camera -- my camera obviously gives a different
 8   perspective.
 9        Q.   (By Mr. Sykes)  Uh-huh.
10        A.   More of a perspective from where I was
11   standing at the time.  However, looking at other cameras
12   and surveillance and different views, it, it seems
13   reasonable to me that Sergeant -- is it Scott, or...
14        Q.   Peay.  Scott Peay, yeah.
15        A.   From where he was -- I know there's two
16   brothers, and I know the one brother's the one that was
17   in front of me.  Again, I don't know these guys well,
18   But I've --
19        Q.   Yeah.
20        A.   Interacted with them occasionally over the
21   years.
22        Q.   Uh-huh.
23        A.   But it seems reasonable when you're focused in
24   on somebody that's driving at the direction where your
25   brother is, that he feared that his brother's life was
```

16

*Johnson v. Peay * Depo of TODD HARDMAN * 10-22-15*

```
 1   in danger.
 2           So, yeah, where he was positioned -- again,
 3   and I, I see that the reason that I thought he was back
 4   further is because he does step back further.  From
 5   where you initially pointed him out to me, he takes
 6   several steps back out of camera view prior to taking
 7   the shot at her.
 8       Q.   Uh-huh.
 9       A.   And I say her only now because I know it's a
10   her.  At the time I obviously didn't know.  But he,
11   given his vision, which -- and I'm basing this off of
12   another camera view.  I don't recall whether it's
13   Dingman's camera or one of the others.
14           But it would have been difficult for him to
15   be, you know, focussed in on her or, you know, the
16   driver of the vehicle, and know exactly where the other
17   officers, particularly his brother, was, at the time
18   when she's, you know, revving the engine and trying to,
19   to proceed forward.
20           You know, that's why it seems reasonable to me
21   that he feared that his brother's life was in danger and
22   that's why he took the action that he did.  I don't know
23   what he was thinking.  I haven't talked to him about
24   this particular case.  I didn't talk to him that night.
25   I haven't talked to him since.  So I don't --
```

17