PETER STIRBA (Bar No. 3118)
JULIA D. KYTE (Bar No. 13113)
JEFFREY D. MANN (Bar No. 13795)
**STIRBA, P.C.**
215 South State Street, Suite 750
P.O. Box 810
Salt Lake City, UT 84110-0810
Telephone: (801) 364-8300
Fax: (801) 364-8355
Email: jmann@stirba.com
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| KRISTINE BIGGS JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL SCOTT PEAY, a Morgan County Sheriff's Sergeant; MORGAN COUNTY, a Political Subdivision; and JOHN AND JANE DOES 1-10,<br><br>Defendants. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF AMENDED CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:14-cv-00147-TC<br><br>Judge Tena Campbell<br>Magistrate Judge Brooke C. Wells |

Defendants Sergeant Daniel Scott Peay ("Sergeant Peay") and Morgan County, (collectively, "Defendants"), by and through undersigned counsel of record, hereby submit this Reply Memorandum in Support of Amended Cross-Motion for Summary Judgment. Defendants respectfully request that this Court grant summary judgment to Sergeant Peay on Plaintiff's First Cause of Action on the basis of qualified immunity.

**INTRODUCTION**

Defendant's Amended Cross-Motion for Summary Judgment is made pursuant to the doctrine of qualified immunity, but only on the basis of the second prong of the qualified immunity analysis – because the law was not clearly established that Sergeant Peay's use of force was unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Under this premise and for the purpose of Defendant's motion only, it does not matter whether Sergeant Peay's use of force was reasonable. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). If Plaintiff cannot show that "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it," by showing a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other courts establishing the law, then Defendants are entitled to qualified immunity. *Plumhoff v, Rickard*, 134 S.Ct. 2012, 2023 (2014); *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012).

Plaintiff makes almost no effort whatsoever to show that as of November 25, 2012, "every reasonable official" would have known the use of deadly force was unjustified under the circumstances because existing precedent at the time had placed the constitutional question "beyond debate." *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2083 (2011). In fact, Plaintiff fails to identify a single case with any hint of similarity to the situation faced by Sergeant Peay. As a result, this Court should grant Defendants' motion and dismiss Plaintiff's first cause of action.

## REPLY TO STATEMENT OF FACTS

Plaintiff attempts to dispute Defendants' "Additional Undisputed Material Facts" by arguing that the facts are immaterial, contrary to video evidence, based on subjective belief, and/or are based on a motive to deny.[1] Plaintiff's reliance on arguments rather than citing record evidence upon which Plaintiff relies to dispute the facts is in violation of DUCivR 56-1(c)(2)(B) and does not create a genuine dispute. Such arguments should be disregarded.

Plaintiff has not alleged a dispute to Defendants' facts 1–6, 15–16, 19, 21, 23, and 25.[2] These facts are undisputed. Defendants reply to the facts to which Plaintiff does allege a dispute as follows:

| Defendants' Fact 7 | Plaintiff's Response |
|---|---|
| Sergeant Peay came around the rear of his vehicle and realized Ms. Johnson "had a look of rage on her face . . . . directed at me," which influenced how he thought things would transpire. (Sergeant Peay Interview 17:16–18:10; Sergeant Peay Dep. 35:2–8, 43:2–16, 46:14–48:9.) | Disputed. See III. B, C and D above. This alleged "look of rage on her face" allegedly was only seen by Sgt. Peay and his brother, both of whom have (or had) a motive to deny or exaggerate. It is a subjective perception. It is also very difficult to imagine that Sgt. Peay could have perceived the alleged look of rage on someone's face during the 10 o'clock hour in late November with sirens blaring and pulsating strobe lights of 6-10 police vehicles illuminating the area. |

**REPLY**: Plaintiff's alleged does not contain citations to any record evidence that disputes Sergeant Peay's testimony. The video evidence shows that there was sufficient light for Sergeant Peay to see Plaintiff's face clearly. (*See* Dingman dash-cam video, Pl's Ex. 4 at 22:15:30–22:15:45.) This fact is undisputed.

---

[1] D.E. 58 at xxv–xxix. Plaintiff also improperly denies the facts based on an argument that Sergeant Peay voluntarily exposed himself to danger. Not only does this argument not dispute any of Defendants' facts, but it also has nothing to do with Defendants' motion, which is based on the clearly established prong of the qualified immunity analysis.

[2] *Id.* at xxv, xxix–xxiv.

| **Defendants' Fact 8** | **Plaintiff's Response** |
|---|---|
| Sergeant Peay believed Ms. Johnson "was turning around and was going to use the truck as a weapon" because "she wasn't pinned in, she could have went up the road or stopped, but rather she was turning and coming at us." (Sergeant Peay Dep. 43:17–44:5; *see id.* at 48:13–19 ("She was clearly using her vehicle as a weapon to come at me."); *id.* at 75:4–5 ("She wasn't fleeing anymore, she was attacking us."); *id.* at 89:12–15 ("she is using her vehicle as a weapon"); Sergeant Peay Interview 17:16–18:10.) | Disputed. Plaintiff admits that Sgt. Peay made these self-serving, subjective statements, but deny their accuracy. See III. B, C and D above. |

**REPLY**: Plaintiff's alleged dispute does not cite any record evidence that disputes Sergeant Peay's testimony. The dash-cam videos support Sergeant Peay's testimony that Plaintiff could have continued up the road or stopped, but elected to turn around and use her vehicle as a weapon against the officers. (*See* Dingman dash-cam video, Pl.'s Ex. 4 at 22:15:20–22:15:50.) This fact is undisputed.

| **Defendants' Fact 9** | **Plaintiff's Response** |
|---|---|
| Sergeant Peay said about Ms. Johnson driving her vehicle towards him: "there was no question in my mind when she came, that she was trying to hit me, that it wasn't my truck she was trying to hit, she was looking at me and coming after me and trying to hit me." (Sergeant Peay Dep. 43:23–44:5; Sergeant Peay Interview 17:16–18:10.) | Disputed. See III. B, C and D above. Plaintiff admits that Sgt. Peay made the self-serving subjective statements, but they are certainly disputed. |

**REPLY**: Plaintiff's alleged dispute does not cite any record evidence that disputes Sergeant Peay's testimony. Sergeant Peay's reasonable perceptions are relevant. This fact is undisputed.

4

| **Defendants' Fact 10** | **Plaintiff's Response** |
|---|---|
| Sergeant Peay also testified: "she was focused on me and she tried to hit me. She was looking at me. I could clearly see her through the windshield. She was screaming and revving her engine and she came at me . . . . She had an expression of rage on her face . . . ." (Sergeant Peay Dep. 46:14–48:9.) | Disputed. See III. B, C and D above. Plaintiff admits that Sgt. Peay made the self-serving subjective statements, but they are certainly disputed. |

**REPLY**: Plaintiff's alleged dispute is based on argument, not facts. Plaintiff does not cite any record evidence that disputes Sergeant Peay's testimony that he could see Plaintiff looking at him, the expression on her face, and her scream as she drove at him. This fact is undisputed.

| **Defendants' Fact 11** | **Plaintiff's Response** |
|---|---|
| Ms. Johnson's car came "within inches or a foot" of Sergeant Peay, pushing his truck towards him, but Sergeant Peay was able to "bend backwards at the waist and move [his] feet and legs backwards to avoid being hit." (Sergeant Peay Dep. 56:7–14, 78:15–80:25.) | Disputed. This alleged fact is blatantly untrue. It is contradicted by the video evidence, which shows what happened with unquestioned accuracy. Sgt. Peay strides up within a foot or two of Plaintiff's vehicle, not the other way around. |

**REPLY**: The video does not contradict Sergeant Peay's testimony. It shows that Plaintiff drove forward toward Sergeant Peay as he was coming around the back of his patrol vehicle, and that Plaintiff's truck came very close to hitting Sergeant Peay, who moved back to avoid being hit. (*See* Dingman dash-cam video, Pl's Ex. 4 at 22:15:20–22:15:45.) Plaintiff twists the facts as if Plaintiff's truck were standing still and Sergeant Peay almost runs into it. Clearly, Plaintiff's truck was moving forward as it rammed into Sergeant Peay's patrol vehicle and almost struck Sergeant Peay. This fact is undisputed.

| **Defendants' Fact 12** | **Plaintiff's Response** |
|---|---|
| Ms. Johnson backed up again and Sergeant Peay "tried to communicate with her yelling for her to stop and get out of her truck . . . ." (Sergeant Peay Dep. 81:17–23; Sergeant Peay Interview 17:16–18:10.) | Disputed. The Dingman video confirms that at least one siren was wailing during this time, which would make such "communication" ineffective. Sgt. Peay's claim is also contradicted by his interview testimony, where he stated: |

|   | I had instructed Christian to be the contact person with her prior to this coming to the end. I said if you can, you are the one that is gonna give commands. And he acknowledged that, and that's how we intended for that to, to happen, but it obviously didn't go as planned. |
|---|---|
|   | Sgt. Peay interview, p. 8. Defendants' reference to that interview at "17:16–18:10" is in error. No such statement is presented on those pages. |

**REPLY**: Plaintiff's argument that the communication may have been ineffective does not dispute this fact. In the video one can faintly hear someone yelling "stop the car" or something to that effect. (Dingman dash-cam video, Pl's Ex. 4 at 22:15:30–22:15:45.) Plaintiff's citation to Sergeant Peay's interview does not contradict this fact. He admitted the intent to have Christian give commands "didn't go as planned." Defendants intended to cite Sergeant Peay Interview 18:11–16, which includes the quoted statement. This fact is undisputed.

| **Defendants' Fact 13** | **Plaintiff's Response** |
|---|---|
| Deputy Peay also saw that when Ms. Johnson turned around on Cottonwood Drive she "struck Sgt. Peay's Patrol vehicle and nearly hit[] Sgt. Peay" who "was outside of his vehicle and standing on the right side of it at the time giving the driver commands to stop." (MCSO_00021.) | Disputed. The video evidence contradicts Deputy Peay's claim that Plaintiff's vehicle nearly hit Sgt. Peay. |

**REPLY**: The video evidence does not contradict Deputy Peay's testimony as it shows that Plaintiff's truck rammed into Sergeant Peay's patrol vehicle and nearly struck Sergeant Peay. (*See* Dingman dash-cam video, Pl's Ex. 4 at 22:15:30–22:15:45.) This fact is undisputed.

| **Defendants' Fact 14** | **Plaintiff's Response** |
|---|---|
| Deputy Peay exited his patrol truck as "Sgt. Peay was still giving her commands to stop." (MCSO_00021.) | Disputed. See Response to Defs' Fact 12. |

**REPLY**: *See* Reply to Fact 12 above.

| Defendants' Fact 17 | Plaintiff's Response |
|---|---|
| Ms. Johnson then drove "right at" Deputy Peay, striking "the left side of [his] front bumper," with enough force to move his patrol vehicle. (MCSO_00021; *see* Deputy Peay Interview 17:14–16.) | Disputed. As shown on the videos, Deputy Peay was well behind the front bumper of his truck and not in danger of being struck by Plaintiff's vehicle. It is also a subjective presumption that Ms. Johnson was purposefully driving "right at" Deputy Peay. |

**REPLY**: Plaintiff's claim that Deputy Peay was standing behind the front bumper of his truck and not in danger does not dispute the fact that Plaintiff drove right at Deputy Peay and struck his patrol vehicle with sufficient force to move it. Deputy Peay's statements that the Plaintiff drove right at him are based on his perceptions and observations. The video evidence also supports Deputy Peay's statements. (*See* Hardman dash-cam video, Pl.'s Ex. 5 at 22:06:00–22:06:15.)

| Defendants' Fact 18 | Plaintiff's Response |
|---|---|
| As Ms. Johnson drove forward into Deputy Peay's vehicle, Deputy Peay stepped back to avoid being hit. (*See* Hardman dash-cam video, Pl.'s Ex. 5 at 22:06:00–22:06:15; Sergeant Peay Dep. 61:14–17.) | Disputed. This alleged fact is contradicted by the video evidence. While Deputy Peay did step back, he was never in danger of being hit because even before he stepped back, he was shielded by his truck and the other vehicles to his left. Additionally, Sgt. Peay's alleged perception, "stepped back to avoid being hit," is subjective, and therefore irrelevant. |

**REPLY**: The video does not contradict the fact that Deputy Peay stepped back, and Plaintiff acknowledges as much. However, the video does not show how close Deputy Peay was to being hit or whether he would have been hit if he had not backed up. (*See* Hardman dash-cam video, Pl.'s Ex. 5 at 22:06:00–22:06:15.) Deputy Peay's perceptions are relevant and the inference that he stepped back to avoid being hit is readily apparent from the video.

| **Defendants' Fact 20** | **Plaintiff's Response** |
|---|---|
| Sergeant Peay, who was experiencing tunnel vision, could not see Deputy Peay as Ms. Johnson rammed Deputy Peay's truck. (Sergeant Peay Dep. 76:8–24.) | Disputed. If Sgt. Peay indeed could not see his brother, which is doubtful based on the video, it is only because his brother was well out of the way of being struck by Plaintiff's vehicle. Based on the positioning of the actors and vehicles shown on Hardman's video, Sgt. Peay would have been able to see his brother if Christian had been careless enough to step between his truck and Plaintiff's oncoming vehicle. Christian was not so careless, nor would any reasonable officer be so careless. Sgt. Peay's justification that he feared for this brother's life is unreasonable in the circumstance. Additionally, Sgt. Peay's alleged "tunnel vision" is subjective to the officer, not objective, and therefore irrelevant on summary judgment. |

**REPLY**: The videos do not show what Sergeant Peay saw from his perspective and thus do not dispute this fact. (*See* Dingman dash-cam video, Pl's Ex. 4 at 22:15:15–22:15:45; Hardman dash-cam video, Pl.'s Ex. 5 at 22:05:45–22:06:15.) Sergeant Peay's perceptions and observations, including his experience with tunnel vision, are relevant and undisputed.

| **Defendants' Fact 22** | **Plaintiff's Response** |
|---|---|
| After the shot was fired, Ms. Johnson's truck stopped. (Sergeant Peay Dep. 60:24–25.) | Disputed. This does not tell the whole story. The video evidence shows that Ms. Johnson's truck had stopped just before Sgt. Peay fired his weapon. See Plaintiff's Fact 24 and her Reply to Defendants' Response thereto. |

**REPLY**: Sergeant Peay testified that Plaintiff continued to push against Deputy Peay's patrol vehicle after impact. (Sergeant Peay Dep. 85:18–86:13.) The videos do not clearly show what Plaintiff's truck did after impact and thus do not dispute this fact. (*See* Dingman dash-cam video, Pl's Ex. 4 at 22:15:15–22:15:45; Hardman dash-cam video, Pl.'s Ex. 5 at 22:05:45–22:06:15.)

| **Defendants' Fact 24** | **Plaintiff's Response** |
|---|---|
| Ms. Johnson admitted shortly after the incident that "she was attempting death by cop when she repeatedly rammed her car into a police vehicle," and that she "had every intention of trying to kill [her]self . . . ." (Johnson Dep. 67:5–20, 75:12–77:21; Ms. Johnson Interview 2:13–17; Ms. Johnson Medical Records, ORMC 245–247.) | Disputed. This grossly and blatantly misrepresents Ms. Johnson's testimony. These quotations are defense counsel reading from some document that is not identified on the cited pages. Ms. Johnson clearly denied any recollection of such statements. She had no recollection of the incident. She clarified how such false admissions came to be recorded:<br><br>MS JOHNSON: Anything that I said to them was what had been told to me after I regained consciousness. I do not recall speaking about suicide. I do recall them believing that I attempted to take a police officer's life, and that I was intent on trying to kill a police officer. And I remember them suggesting that perhaps what I was trying to attempt was suicide by cop.<br><br>Johnson Dep. 77:15–21. |

**REPLY**: Within three days of the incident, Ms. Johnson repeatedly stated that she was suicidal and had attempted "death by cop." In an interview, before the detectives asked her any questions about the incident, Ms. Johnson voluntarily stated: "I had every intention of trying to kill myself . . . ." (Ms. Johnson Interview 2:13–17.) A nurse at the hospital recorded "PT expressed a desire to hurt herself to her friend Audrey Powers." (ORMC 0232.)[3] A subsequent suicide assessment at the hospital revealed: "PT states that she was attempting 'death by cop' when she repeatedly rammed her car into a police vehicle causing a deputy to shoot the pt in the left eye through the pt's windshield." (ORMC 0245–247.) No one suggested to Plaintiff that she was trying to attempt suicide by cop when she made these statements. Whether or not Plaintiff could remember making those statements does not dispute the evidence that she made them.

---

[3] Attached hereto as a supplement to Defendants' Ex. K ("Documents Labeled ORMC") (D.E. 48-12).

# ARGUMENT

I. **THE UNDISPUTED MATERIAL FACTS SHOW THAT SERGEANT PEAY DID NOT VIOLATE CLEARLY ESTABLISHED LAW**

In response to Defendants' Amended Cross-Motion for Summary Judgment on the basis of qualified immunity, Plaintiff makes several unavailing arguments. The first four can be summarized as asking the Court to blindly accept Plaintiff's mischaracterizations of the dash-cam videos and reject all other record evidence. The last argument is a failed attempt to show that the law was clearly established. None of Plaintiff's arguments can successfully overcome the defense of qualified immunity to defeat Defendants' motion for summary judgment.

A. **The Undisputed Material Facts Show That Sergeant Peay Did Not Violate Clearly Established Law Under The Circumstances**

A determination of qualified immunity requires a court to pay close attention to the facts and circumstances of the particular case and the totality of the circumstances. *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259–60 (10th Cir. 2008). This is necessary in order to make "[t]he relevant dispositive inquiry in determining whether a right is clearly established" by deciding "whether it would be clear to a reasonable officer that his conduct was unlawful ***in the situation he confronted***." *Saucier v. Katz*, 533 U.S. 194, 207 (2001) (emphasis added).

1. <u>The Court must not rely exclusively on video evidence</u>

In *Scott v. Harris*, 550 U.S. 372, 378–380 (2007), the Supreme Court established that a party's version of the facts should not be accepted if it is blatantly contradicted by the record. In cases where there is a video recording of an incident, the court should view the facts in the light depicted by the videotape. *Id.* at 380–81. However, there is a caveat. The video must clearly capture the events in question and the court should let the videotape speak for itself. *See id.* at

378 & n.5. However, if the video does not capture the entire incident or if there is additional undisputed evidence, the court must view it all together. *See Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) ("We rely on that video evidence, while acknowledging that it did not capture everything. Therefore, in addition to relying on the video, we also continue to view the evidence in the light most favorable to" the non-moving party); *see also York v. City of Las Cruces*, 523 F.3d 1205, 1210–11 (10th Cir. 2008) ("only part of the incident involving the Yorks and the police officers was captured on the audio tape, portions of which are unintelligible").

The bulk of Plaintiff's argument is essentially that there are dash-cam videos of the incident on the night of November 25, 2012, which show the Court everything it needs to know, and the Court should ignore any statements made by the officers because they are either lying, or their observations are "improper subjective evidence." In so doing, Plaintiff relies on *Scott* and a myriad of other cases where the court accepted facts portrayed in videotapes.[4] However, even in the cases cited by Plaintiff, the courts routinely relied on additional evidence because the videos did not show everything. *See, e.g. Woodcock v. City of Bowling Green, Kentucky*, --- F.Supp.3d ----, 2016 WL 742922 **1–5 (W.D. Ken. Feb. 24, 2016) (court relied on record evidence not shown or apparent from the video including movement of officers, distances, and officer testimony about what they observed); *Pollard v. City of Columbus, Ohio*, 780 F.3d 395, 400 (6th Cir. 2015) (court relied on officers' testimony in addition to the video because the inside of the suspect's vehicle and the suspect's movements were not visible in the video); *Estate of Booker v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014) (relying on parties' statements of undisputed facts in addition to video evidence); *Harper v. Rose*, Case No. 1:09-CV-153, 2012 WL 1150463 **2–3

---

[4] D.E. 58 at 4–21.

11

(D. Utah Apr. 5, 2012) (unpublished) (recognizing that some video "images were low quality or taken from too far away so it was not possible to observe on the video exactly what occurred when Mr. Harper was on the ground").

The holding of *Scott* is not in dispute. Defendants acknowledge that the Court is capable of viewing the videos and letting the videos speak for themselves. However, Plaintiff repeatedly mischaracterizes the videos while ignoring other undisputed evidence.

First, Plaintiff makes several assertions that mischaracterize and/or are unsupported by the dash-cam videos, such as: the number of Plaintiff's tires that came off her vehicle; the number of officers on the scene; that the Plaintiff was "oblivious" to the patrol cars and their lights and sirens; that the Plaintiff was "blocked" by patrol cars; that Plaintiff's vehicle was traveling only 2 or 3 miles per hour as it rammed the patrol cars; that Sergeant Peay was not within a foot of being struck by Plaintiff's truck; that Plaintiff backed up about 6 feet, preparing to turn away from Sergeant Peay; and most glaringly, the conclusory statement that no one was in danger when the Plaintiff was ramming her car into two patrol cars and almost hitting officers standing nearby.

In addition, the videos did not capture everything, such as: the Plaintiff's face during the incident, including where she was looking, her expression, and whether she was screaming; who is speaking and what is said during the incident; exactly how close Plaintiff's car came from hitting Sergeant Peay; and the perspective of Sergeant Peay and what he saw during the incident, including his experience with tunnel vision. For these reasons, Defendants disputed Plaintiff's mischaracterizations of the videos, encouraged the Court to view the videos as they really are,

and provided additional undisputed record evidence to assist the Court in viewing the "totality of the circumstances."

The videos show what they show. The testimony is what it is. The documents speak for themselves. And the Court is fully capable of viewing all the evidence together "in the light most favorable to the non-moving party" for purposes of summary judgment, without Plaintiff's mischaracterization of the facts. *See Scott*, 550 U.S. at 378–81 & n.5; *Thomas*, 607 F.3d at 659.

### 2. Non-video evidence is undisputed and supplements the videos

Nevertheless, Plaintiff calls into question the undisputed facts presented by Defendants by claiming that these facts either contradict the videos, present improper subjective evidence, and/or are outright lies from individuals with a "motive to deny."[5] Such is not the case.

First, Defendants' statements of fact do not contradict the videos. The videos show that the cabin of Plaintiff's truck is lit enough for Sergeant Peay to see Plaintiff's face through the windshield and determine where she looked, her expression, and that she yelled as she rammed into the patrol vehicles. (*See* Dingman dash-cam video, Pl.'s Ex. 4 at 22:15:30–22:15:45.) The videos, however, do not clearly show Plaintiff's face, so Sergeant Peay's testimony supplements the videos. (*Id.*) The videos also show that Plaintiff aimed her truck at Sergeant Peay and Deputy Peay. (*See id.*; Hardman dash-cam video, Pl's Ex. 5 at 22:05:55–22:06:15.) The videos also show that Plaintiff's truck nearly struck Sergeant Peay, although it is difficult to say how close it came. (*See* Dingman dash-cam video, Pl.'s Ex. 4 at 22:15:30–22:15:45.) Sergeant Peay's testimony as to how close it came and how he maneuvered to avoid begin hit supplements what can be seen in

---

[5] D.E. at 21–24.

the videos. All of these facts viewed together indicate that Plaintiff was intentionally turning her vehicle around to use it as a weapon.

Second, what the officers saw, such as the expression on Plaintiff's face as she screamed and drove forward, is not subjective facts going to "intent or motivation." *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Their observations are objective facts that are admissible and uncontradicted. *See Pollard*, 780 F.3d at 400 (court relied on officers' testimony regarding the suspect's movements inside the vehicle that were not visible in the video). Much of the officers' deposition testimonies were given as Plaintiff's counsel showed the officers the videos and asked questions about them. The deponents were describing what they saw in the videos and what they remembered from the incident.

Third, simply because the officers testified to things not clear from the videos does not mean the officers are lying. Plaintiff's counsel had the opportunity during the depositions to question the officers about their statements and observations. Now Plaintiff questions the credibility of the officers' sworn testimony, arguing that they are involved in a grand conspiracy – a "thin blue line" as she calls it – to lie and conceal in order to protect Sergeant Peay. A plaintiff may not create a genuine issue of material fact by relying on unsupported allegations of conspiracy while refusing to admit the facts that a defendant supports with undisputed evidence and without presenting any conflicting facts of her own. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Plaintiff cannot dispute the facts, so she calls the officers liars. But these facts are undisputed and they provide the context under which this Court must analyze the clearly established prong of the qualified immunity doctrine.

### B. Plaintiff Has Failed To Prove That The Law Was Clearly Established That The Force Used Was Constitutionally Excessive

The question before the Court on Defendants' Amended Cross-Motion for Summary Judgment is whether, under the circumstances confronted on November 25, 2012, a reasonable officer would have known that the use of force employed by Sergeant Peay was excessive because it violated clearly established law. This requires the Plaintiff to show that it would have been clear to a reasonable officer that Sergeant Peay's conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 U.S. 194, 207 (2001). If Plaintiff cannot show that "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it," then Defendants are entitled to qualified immunity. *Plumhoff v, Rickard*, 134 S.Ct. 2012, 2023 (2014) Plaintiff must do this, not at a high level of generality, but by showing a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other courts establishing the law was clear under the totality of the circumstances. *Id.*; *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012).

In other words, assuming, *arguendo*, that Sergeant Peay's use of force was unreasonable, Plaintiffs still have the additional burden of identifying case law that shows the it was "clearly established," "sufficiently definite," and "beyond debate" that Sergeant Peay should have known his use of force was unreasonable under the circumstances of this case. Those circumstances were as follows: a suspect failed to stop for a traffic violation, led police on a 30-minute high-speed pursuit and refused to stop even after tire spikes were used. Then, in a span of less than 30 seconds, the driver slowed down, suddenly turned her vehicle around to face the officers, rammed a patrol vehicle almost hitting one officer, backed up, screamed with a look of rage on her face, rammed a second patrol vehicle almost hitting another officer, all while at least one

15

officer was yelling at her to stop. At each step in this process, Plaintiff was in control. She could have stopped and submitted to authority and no one would have been hurt. But she elected to flee from police, ram the patrol vehicles, use her vehicle as a weapon aimed at officers directly in front of her, give no indication that she was going to stop, and create a danger to all the officers on the scene. Under those circumstances, it was not clearly established that deadly force was unlawful.[6]

The only cases that Plaintiff cites to show the law was clearly established are of the "high degree of generality" variety, which identify the general standard of when deadly force may be used, but provide no analogous facts from which it can be shown that every reasonable officer under the particular circumstances Sergeant Peay faced would have known he was violating the law. These general propositions do not turn all excessive uses of force into violations of clearly established law. *See Saucier*, 533 U.S. at 201–02 (general propositions are not enough, the contours of the right must be more particularized to the facts of the case); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (rejecting appellate court's finding that the law was clearly established based on the "general tests set out in *Graham* and *Garner*"). As a result, Plaintiff fails to meet her burden.

---

[6] Plaintiff argues that "Christian Peay [was] indisputably not in danger." (D.E. 58 at 24–25.) This argument is wrong and irrelevant for at least three reasons. First, Christian was in danger. Second, it inappropriately views the facts in hindsight and it does not focus on the correct standard, which is whether it was reasonable for Sergeant Peay's *to believe there was a threat of harm* while also ignoring that qualified immunity allows for reasonable mistakes of fact, mistakes of law, and mistakes based on mixed questions of fact and law. (*See* D.E. 48 at 27–29.) Third, it relates to the question of reasonableness, which is not part of the equation of the clearly established prong of qualified immunity.

On the other hand, Defendants identified[7] factually similar cases that existed at the time, which held that the use of deadly force against a suspect using his vehicle to escape and/or as a weapon creating a danger to officers was not excessive force.

In *Thomas v. Durastanti*, 607 F.3d 655, 661 (10th Cir. 2010), an officer fired his service weapon at a suspect who was attempting to escape by driving at the agents, hitting one and narrowly missing another. The court concluded that the use of force was reasonable because a reasonable officer could conclude the suspect had notice of police presence, but drove toward the officers without any indication he would yield, placing the officers in harm's way. *Id.* at 655–66.

In *Robinson v. Arrugueta*, 415 F.3d 1252, 1254 (11th Cir. 2005), the suspect was driving a small vehicle at 1 to 2 miles per hour toward an officer who had only a few seconds to react before getting crushed between two cars. The court held: "Even if in hindsight the facts show that Arrugueta perhaps could have escaped unharmed, we conclude that a reasonable officer could have perceived that Walters was using the Escort as a deadly weapon. Arrugueta had probable cause to believe that Walters posed a threat of serious physical harm." *Id.* at 1256. The court then concluded: "it is constitutionally reasonable for an officer to use deadly force when a suspect is threatening escape and possible harm to others . . . [and] when he has probable cause to believe that his own life is in peril." *Id.*

In addition, Defendants cited *Plumhoff v. Rickard*, 134 S.Ct. 2012 (2014), which although it was not decided prior to November 25, 2012, it nonetheless provides further evidence that Sergeant Peay did not violate clearly established law. The Supreme Court held that it was

---

[7] D.E. 51 at 3–4; D.E. 48 at 30–33.

reasonable for officers to fire 15 shots at a vehicle as it drove away from the officers because allowing the suspect to escape created a threat for others on the road. *Id.* at 2021–22.

Several other cases with similar facts from the Fourth, Sixth, Seventh, Eighth, and Ninth Circuits that also existed at the time of the incident further support Sergeant Peay's use of force under the circumstances, proving he did not violate clearly established law. *See, e.g. Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (reasonable to shoot at "driver of a moving vehicle, ignoring police commands, attempted to accelerate within close quarters of two officers on foot"); *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 526–27 (8th Cir. 2007) (holding that shooting driver of a vehicle to try to stop him from injuring the officers in his path was objectively reasonable); *Waterman v. Batton*, 393 F.3d 471, 474–75, 477–79 (4th Cir. 2005) (holding that officers were justified in using deadly force when suspect accelerated forward while officers stood several feet away but only a few feet from the projected path of the vehicle); *Scott v. Edinburg*, 346 F.3d 752, 758–61 (7th Cir. 2003) (concluding that suspect who stole vehicle, almost ran over an officer, and drove away where several bystanders were in the vicinity and exposed to threat of harm justified the use of deadly force); *Estate of Starks v. Enyart*, 5 F.3d 230, 233–35 (7th Cir. 1993) (if the driver aims a vehicle at police and had time to brake but did not, police would be justified in using deadly force); *Smith v. Freland*, 954 F.2d 343, 346–47 (6th Cir. 1992) (reasonable for officer to shoot at driver of vehicle after pursuit when driver crashed into patrol vehicle and was escaping because of threat posed to other officers by the car which "can be a deadly weapon").

Not only do these cases show that the law was not clearly established that it was unlawful for Sergeant Peay to use deadly force under the circumstances, they actually show that ***the law***

*was clearly established in Sergeant Peay's favor*. Together, cases from the Supreme Court, the Tenth Circuit, and the clear weight of authority from other courts, confirm that if suspect is using a vehicle to create a threat of harm to the officers or others in the vicinity, deadly force may be used. Plaintiff has not provided any cases to the contrary. Therefore, Plaintiff cannot prove that the law was clearly established that Sergeant Peay's use of force was unlawful under the circumstances and Defendants' motion should be granted.

## CONCLUSION

Plaintiff has failed to meet her burden to overcome Sergeant Peay's defense of qualified immunity. Accordingly, Defendants respectfully ask that this Court grant Defendants' Amended Cross-Motion for Summary Judgment dismiss Plaintiff's first cause of action.

DATED this 23rd day of March, 2016.

**STIRBA, P.C.**

By:    /s/ Jeffrey D. Mann
PETER STIRBA
JULIA D. KYTE
JEFFREY D. MANN
***Attorneys for Defendants***

# CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of March, 2016, a true copy of the foregoing **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF AMENDED CROSS-MOTION FOR SUMMARY JUDGMENT** was served by the method indicated below, to the following:

| | |
|---|---|
| Robert B. Sykes | ( ) U.S. Mail, Postage Prepaid |
| Alyson Carter McAllister | ( ) Hand Delivered |
| Rachel L. Sykes | ( ) Overnight Mail |
| SYKES McALLISTER LAW OFFICES, PLLC | ( ) Facsimile |
| 311 South State Street, Suite 240 | (X) Electronic Filing |
| Salt Lake City, Utah 84111 | |
| | |
| Richard T. Williams | ( ) U.S. Mail, Postage Prepaid |
| ALLEN PACE LAW, P.C. | ( ) Hand Delivered |
| 2550 Washington Blvd., Suite 300 | ( ) Overnight Mail |
| Ogden, Utah 84401 | ( ) Facsimile |
| | (X) Electronic Filing |

/s/ Zachary B. Hoddy
Legal Assistant