ROBERT B. SYKES (#3180)
 bob@sykesinjurylaw.com
ALYSON C. McALLISTER (#9886)
 alyson@sykesinjurylaw.com
RACHEL L. SYKES (#11778)
 rachel@sykesinjurylaw.com
**SYKES McALLISTER LAW OFFICES, PLLC**
311 South State Street, Suite 240
Salt Lake City, Utah 84111
Telephone (801) 533-0222
Facsimile (801) 533-8081

RICHARD T. WILLIAMS (#9115)
 rich@arplegal.com
**ALLEN PACE LAW, P.C.**
2550 Washington Blvd., Suite 300
Ogden, Utah 84401
Telephone (801) 393-9600
Facsimile (801) 399-4194

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### NORTHERN DIVISION

| | |
|---|---|
| KRISTINE BIGGS JOHNSON, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIFTH CAUSE OF ACTION** |
| Plaintiff, | |
| vs. | |
| DANIEL SCOTT PEAY, a Morgan County Sheriff's Sergeant, MORGAN COUNTY, a Political Subdivision; and JOHN and JANE DOES 1-10, | Civil No. 1:14-cv-147-TC |
| | Judge Tena Campbell |
| Defendants. | *~ Oral Argument Requested ~* |

**INTRODUCTION**

Plaintiff **does not oppose summary judgment** on the **2nd, 3rd, and 4th** Causes of Action, for purposes of this pleading alone, because those Causes of Action are dependent upon Defendant Scott Peay not having qualified immunity. Since the Court has already awarded qualified immunity to Sgt. Peay in the prior Order (Doc. 73), it is only reasonable that these similar or dependent Causes of Action be subject to the same Ruling. Plaintiff strongly disagrees with that outcome, but that will have to be challenged and determined on appeal to the Tenth Circuit.

Plaintiff **opposes summary judgment** on her ***Fifth Cause of Action***, namely, "Violation of State Civil Rights," and specifically, violation of Article I, Section 14 of the Utah Constitution, which involves a different standard, i.e., proof of a "flagrant" violation of rights. This is not subject to a qualified immunity defense. Art. I, Section 14 reads in part: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated." Plaintiff was unreasonably seized when Daniel Scott Peay (hereinafter, "Peay") shot her in the head with his handgun even though at the time of the shooting, no officer or anyone else was in immediate danger of serious injury or death.

**THE APPLICABLE STANDARDS**

The standards for state and federal constitutional claims are different because they are based on different interpretive case law. The very concepts of "qualified immunity" and other immunities are not present in the analysis of state

constitutional claims.[1] For example, the question of whether officer misconduct is "clearly established" in the federal case law is not a necessary factor in determining whether an officer has violated Art. I, Section 14 of the Utah Constitution. The Utah Supreme Court has made it very clear that:

> ...*the standards* for determining whether a plaintiff is entitled to damages for a state constitutional violation *differ* from the standards for assessing claims under the federal constitution.

*Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 44, 250 P.3d 465, 477 (emphasis added). In other words, in this case, the standard for determining a state constitutional violation is simply whether the subject seizure – by the use of deadly force – was objectively reasonable under Utah state law. This is determined without the federal elements of qualified immunity or "clearly established" that tend to favor the actions of law enforcement officers even when they are otherwise egregious, outrageous, without objective basis, and/or are mistaken. *See, e.g., State v. Tiedemann,* 2007 UT 49, ¶ 34, 162 P.3d 1106 (noting that "Utah's search and seizure provisions (which are identical to those in the federal constitution) provide *a greater expectation* of privacy than the Fourth Amendment as interpreted by the United States Supreme Court" (emphasis added). Further,

> While some of the language of our state and federal constitutions is "substantially the same," *similarity of language "does not* indicate that this

---

[1] "The Governmental Immunity Act does not apply to claims alleging state constitutional violations." *Jensen ex rel. Jensen v. Cunningham,* 2011 UT 17, ¶ 50, 250 P.3d 465, 479.

court moves in 'lockstep' with the United States Supreme Court's [constitutional] analysis or *foreclose our ability to decide in the future that our state constitutional provisions afford more rights than the federal Constitution.*"

*Jensen,* 250 P.3d at 478, ¶46 (emphasis added). In Utah, "we owe federal law no more deference in that regard than we do sister state interpretation of identical state language." *Id.* In particular,

> Because the *state and federal standards* for determining whether a plaintiff is entitled to damages for a constitutional violation are *different*, *a federal court determination* that the material undisputed facts do not give rise to a federal constitutional violation *does not preclude a state court from deciding whether those same facts will give rise to a state constitutional violation.*

*Id.,* ¶49 (emphasis and double emphasis added). The take-away on this for the instant case is that a federal determination that Sgt. Peay's actions were objectively reasonable, resulting in federal qualified immunity, "does not preclude a state court from deciding whether those same facts will give rise to a state constitutional violation."

The applicable standard, then, involves the following:

> In contrast, to recover monetary damages *for a violation of the Utah Constitution, a plaintiff must demonstrate* that the provision violated by the defendant is self-executing and then must establish three elements: (1) *the plaintiff suffered a flagrant violation* of his or her constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries.

*Id.,* ¶48 (emphasis and double emphasis added; internal citation and quotation marks omitted). A "flagrant violation" "[i]n essence... means that a defendant must have violated *clearly established constitutional rights of which a reasonable person would have*

-4-

*known.*" *Spackman v. Board of Education,* 2000 UT 87, ¶23, 16 P.3d 533 (emphasis added, citations and internal punctuation omitted). "To be clearly established, the contours of the right must be sufficiently clear that *a reasonable official would understand that what he was doing violates that right.*" *Id.* (emphasis added, citations and internal punctuation omitted). These elements are to be determined by state, not federal law. *Jensen,* 250 P.3d at 478, ¶45.

### The State Court Issue

So, here is the issue in state court: "Should Sgt. Peay, acting reasonably, have known and understood that he was not permitted under Utah law to attempt to kill or to kill a suspect who may be guilty of minor traffic violations, who is moving toward four police vehicles at 2-4 mph, where all of the officers are protected, i.e., between the vehicles?" The answer is "Yes, Sgt. Peay should reasonably have known he was not permitted to use deadly force under these circumstances." The reasons: (1) Utah has a deadly force statute for police officers (*see* Exhibit 1, Utah Code Ann. §76-2-404), which requires that the officer "reasonably believe[] that deadly force is necessary." Sgt. Peay not looking to see where his brother was before shooting is not reasonable, or it is a jury question; and (2) Sgt. Peay must have "probable cause" that the "suspect poses a threat of death or serious bodily injury" to Deputy Christian Peay, and Sgt. Peay's lack of knowledge of the whereabouts of his brother cannot supply probable cause. These points are further explained below.

## ARGUMENT

The elements quoted above are established as follows:

**Self-Executing**. The Utah Supreme Court has previously determined that Article I, Section 14 is self-executing:

> Article I, section 14 is also self-executing.... The plain language of this section directly ***prohibits unreasonable searches and seizures without probable cause*** for a warrant. Such a rule sufficiently gives effect to the underlying rights and duties without implementing legislation.

*Jensen,* ¶63 (emphasis added).

### ~ Element 1 – Flagrant Violation ~

Elements 2 and 3 are met. It is clear that there are no existing remedies that redress Plaintiff's injuries other than to sue for monetary relief. Further, since Plaintiff suffered a serious and permanent injury, there is no "equitable relief, such as an injunction," that is "adequate to protect the plaintiff's rights or redress his or her injuries."

Peay's use of deadly force was a "flagrant" violation of Plaintiff's rights guaranteed by Article I, Section 14 of the Utah Constitution. This right is broader than rights under the Fourth Amendment of the U.S. Constitution.

### ~ Mistake Is Not Reasonable Under the Circumstances ~

As this Court noted in its Order granting Peay federal qualified immunity, *Peay was "mistaken"* that his brother was in immediate danger when Peay fired his

weapon at Plaintiff's head[2]. Plaintiff contends it is not "reasonable" under state law to base the decision to use deadly force on a "mistaken" guess. Plaintiff is well aware that "police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation." *Graham v. Connor,* 490 U.S. 386, 387 (U.S. 1989). But the use of *deadly* force – intending to kill another person – surely must be based upon more than a mistaken guess. That would <u>not</u> be "reasonable" under state law, as shown below.

A Utah State jury should determine whether it is "flagrant" for an officer to shoot to kill a Utah citizen based on no more than a mistaken, unverified hunch. This is particularly so when the "possibly dangerous" situation Peay wrongly imagined (i.e., "maybe" his brother was at risk of injury) could have been verified or dispelled by a simple glance to his right for less than a second. A quick glance to the right would have demonstrated that no officer was in immediate danger, as the dash-cam videos show. But Peay did not glance over. He decided instead to try to kill Ms. Johnson, even though Sgt. Peay himself was not in danger, and even though *he did not know* whether or not any other officer was in danger.

### ~ <u>No Probable Cause</u> ~

Plaintiff contends that under Utah law, the use of deadly force must be reasonably justified by at least "***probable cause***" to believe the suspect poses a threat of

---

[2] Doc. 73, Order, p.10.

death or serious bodily injury to the officer or to others if apprehension is delayed." Utah Code Ann. §76-2-404(1)(b)(ii) (emphasis added). In other words, under the Utah standard, Sgt. Peay would have to know, or have good reason to believe, that "more probably than not" Ms. Johnson posed a threat of death or serious injury to Deputy Peay. But Sgt. Peay did not know where Deputy Peay was! When Sgt. Peay *last* saw Deputy Peay, he was *protected* by the other officers' cars. Sgt. Peay Depo. 60:14-17. Peay's proffered reason for his use of deadly force is therefore simply not "reasonable." At a minimum, a state jury should determine whether it is reasonable.

Posed another way, is it reasonable that killing a human being is justified when an officer thinks "maybe" someone is in danger? We would hope the answer is "absolutely not." Any particular use of deadly force must have a solid basis stronger than "maybe someone is in danger."

~ <u>**Egregious Conduct is Flagrant**</u> ~

As the *Jensen* court wrote:

> The first step inquires whether the defendants' alleged conduct constitutes a "flagrant violation" of the Jensens' constitutional rights. This element is not satisfied unless the conduct violates clearly established constitutional rights of which a reasonable person would have known.

*Jensen,* 250 P.3d at 482, ¶66 (quotation marks omitted). Of course, the "clearly established" element is a strict requirement for the adjudication of *federally* guaranteed rights under a federal qualified immunity analysis. However, the State of Utah is <u>not</u> so constrained by such federal requirements. The very next paragraph in *Jensen* stated:

> The defendants contend that a flagrant violation cannot exist absent clear precedent on point that specifically recognizes the claimed right and applies it to analogous facts. But ***we believe the flagrant violation standard cannot be so constrained.*** ... we can conceive of instances where ***a defendant's conduct will be <u>so egregious and unreasonable that it constitutes a flagrant violation of a constitutional right even in the absence of controlling precedent</u>***.

*Id.,* ¶67. (emphasis and <u>double</u> emphasis added). Clearly, the Utah Supreme Court is saying that an officer's egregious misconduct can be a "flagrant violation," even where the particular misconduct or violation has not been "clearly established" *in the case law.* This is a rejection of the federal qualified immunity standard, which requires a right to be "clearly established" by federal case law. In Utah, the violation need only be "flagrant," i.e., "egregious and unreasonable." *Id.* This is a significant broadening of the rights afforded to Utah citizens, as compared to the federal rights afforded by the Fourth Amendment.

The argument above, however, does not mean there is no precedent that supports Plaintiff's position. For example, in 2009, the Tenth Circuit did make it clear that an officer's use of deadly force without any immediate threat of serious harm to anyone "would constitute a violation."

> When construed in the light most favorable to the non-moving party, the facts show that Officer Aragon used a level of force ***nearly certain to cause Mr. Cordova's death, <u>though without any immediate threat to himself or others</u>. Those facts, if true, would constitute a violation of Mr. Cordova's Fourth Amendment right to be free from unreasonable seizure.***

*Cordova v. Aragon,* 569 F.3d 1183, 1195 (10th Cir. 2009) (emphasis and <u>double</u> emphasis added). Thus, deadly force by Sgt. Peay, "without any immediate threat to

-9-

himself or others," is a violation of the Fourth Amendment under a federal qualified immunity analysis. It is therefore certainly a violation of Article I, Section 14 of the Utah Constitution. In so stating, the Tenth Circuit did not consider the officer's subjective thoughts or imaginings, or whether it was reasonable whether the officer thought that "maybe" someone was in danger.

Ultimately, summary judgment was granted in that Fourth Amendment case, as in *Biggs Johnson*, because the Court believed it was not yet clearly established that the officer's specific action was violative of the Fourth Amendment. But the adjudication of Utah constitutional violations in the instant case is not subject to the *federal* "clearly established" constraint. The Utah Statute prescribes the "peace officer's use of deadly force" rules in Utah Code Ann. §76-2-404. This "clearly establish[es]" the state rules that govern Sgt. Peay's use of deadly force. Even a federal case, *Cordova v. Aragon*, states rather clearly that actions such as Peay's in the instant case "constitute a violation" when there is no immediate threat to himself or others.

### ~ A "Reasonable Belief" is Not Enough ~

Peay was granted qualified immunity on Plaintiff's First Cause of Action (claiming a Fourth Amendment violation) based on the following reasoning:

> ...the court considers whether Sergeant Peay *reasonably believed* that Ms. Johnson posed an immediate risk of serious physical harm or death to Deputy Peay and the other officers ... Based on the undisputed record, the court finds that his belief, although perhaps *mistaken*, was reasonable.

Doc. 73, Order, p.10 (emphasis added). An officer's "mistaken... belief," is insufficient to justify the use of deadly force under the Utah Constitution because it is (a) not reasonable under the circumstances, and (b) not based on probable cause to believe another officer is in mortal danger. Sgt. Peay is condemned by his own words:

> A. After I saw Christian off to my right side and as she came to him and the stress increased, my eyesight came in a little bit and I was focussed on her completely and ***I couldn't see my brother anymore.*** I wasn't seeing to the side as much as I was to the front.

Sgt. Peay Depo. 76:20-24 (emphasis added). In other words, Deputy Christian Peay was there to be seen – protected by police vehicles. But Sgt. Peay did not even look! So, he fired. He tried to kill Kristine. He used deadly force, even though he did not know where his brother was. When he had last seen Christian, he was not in danger. Sgt. Peay Depo. 60:14-17.

## ~ "Belief" Based on Probable Cause ~

An uncertain and speculative "belief" may be "reasonable" in the Fourth Amendment qualified immunity analysis, as this Court has ruled. But it is a state jury question under the Art. I, §14 "flagrant" analysis. In order to justify the taking of another's life in Utah, Peay must have **probable cause** or an **reasonable belief** that deadly force is necessary to prevent death or serious bodily injury to Christian Peay. But how can that be when Sgt. Peay does not know, by his own admission, where Christian is? How can that be when Christian was safely between two vehicles when he was seen just a few seconds before the shooting? As delineated in Utah Code Ann. §76-2-404(1),

an officer is "justified in using deadly force when ... the officer has probable cause to believe the suspect poses a threat of death or serious bodily injury to the officer or to others if apprehension is delayed." Utah Code Ann. §76-2-404(1)(b)(ii). This is illustrated in *Vaughan v. Cox*:

> Genuine issues of material fact remain as to whether Vaughan and Rayson's flight presented an immediate threat of serious harm to Cox or others at the time Cox fired the shot that struck Vaughan. Based on Vaughan's version of the events, ***it is not clear that Cox had probable cause to believe that Looney or Cox were in immediate danger*** from the suspects at the time of the shooting.

*Vaughan v. Cox,* 343 F.3d 1323, 1330 (11th Cir. 2003) (emphasis added). The same is true here. Peay's uncertain, speculative belief about the possibility of serious harm to his brother is *not reasonable* and *does not engender probable cause* that his brother was in danger. It is a jury question in state court. The U.S. Supreme Court and other Circuits apparently concur with this probable cause standard:

> In other words, whether the use of deadly force at a particular moment is reasonable ***depends primarily on objective assessment of the danger a suspect poses at that moment***. The assessment must be made from the perspective of a reasonable officer in the defendant's position. *Brosseau v. Haugen,* 543 U.S. 194, 197, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). ***That objective assessment requires asking whether "the officer <u>has probable cause to believe</u> that the suspect poses a threat of serious physical harm, either to the officer or to others."*** *Garner,* 471 U.S. at 11, 105 S.Ct. 1694.

*Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007) (emphasis and <u>double</u> emphasis added). "Probable cause" is not capable of precise definition, but

> The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. ... ***[I]t has come to mean more than bare suspicion***: Probable cause exists where the facts and circumstances within

> their (the officers') knowledge and of which they had *reasonably trustworthy information* (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

*Brinegar v. United States,* 338 U.S. 160, 175–76 (1949) (emphasis added; punctuation omitted). Of course, in the passage above, "guilt" and "offense being committed" should be replaced with (belief that) "the suspect poses a threat of serious physical harm." But Sgt. Peay only had an unfounded and "bare suspicion" that his brother might be at risk of harm. Prior to shooting Ms. Johnson in the head, Sgt. Peay noticed his brother "to the side of Dingmann's vehicle," not in front of it where he would be in danger.

> ...sometime between that time when she backed up and started coming forward again I saw Christian out of my peripheral vision and he was to my right. *He was just to the side of Dingmann's vehicle right here.*

Sgt. Peay Depo. 60:14-17 (emphasis added). The dash-cam time counter shows this to have been perhaps 5-7 seconds. Thus, very shortly before shooting, Sgt. Peay knew Deputy Peay was safe, i.e., to the side of Officer Dingman's vehicle (which is where he stayed, according to the dash-cams). Sgt. Peay thus had no basis to reasonably suspect that in the few seconds before firing, his brother left his position of safety and placed himself in harm's way. Not only would that have been an "unreasonable" thing to do, but Peay has offered no testimony addressing any basis, reasonable or otherwise, to believe his brother took such an unreasonable action.

-13-

## CONCLUSION

Based on the arguments presented above, Plaintiff asks this Court to deny Defendants' MSJ on Plaintiff's Fifth Cause of Action and dismiss it without prejudice, since all federal questions are resolved, or transfer the case to a Utah state court for determination (if that is possible).

DATED this 24th day of August, 2016.

**SYKES McALLISTER LAW OFFICES**

/s/ *Robert B. Sykes*
ROBERT B. SYKES
ALYSON C. McALLISTER
RACHEL L. SYKES
*Attorneys for Plaintiff*