FILED
United States Court of Appeals
Tenth Circuit

August 1, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KRISTINE BIGGS JOHNSON,

    Plaintiff - Appellant,

v.

DANIEL SCOTT PEAY and MORGAN COUNTY,

    Defendants - Appellees.

No. 16-4160
(D.C. No. 1:14-CV-00147-TC)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Chief Judge, **LUCERO**, and **MORITZ**, Circuit Judges.

---

Kristine Biggs Johnson suffered a non-fatal gunshot at the conclusion of a lengthy, high-speed chase she initiated in Morgan County, Utah. Johnson then sued the officer who fired the shot, Sergeant Daniel Scott Peay of the Morgan County Sheriff's Department. She claims Sergeant Peay violated her Fourth Amendment right to be free from excessive force. The district court entered summary judgment in favor of Sergeant Peay, finding that he acted reasonably in

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the situation and the contours of Johnson's Fourth Amendment right were not clearly established at the time of the incident. The court therefore found that Sergeant Peay was entitled to qualified immunity and dismissed Johnson's 42 U.S.C. § 1983 claim against him.

To succeed on appeal, Johnson must prove that the constitutional right at issue was "clearly established" at the time of Sergeant Peay's alleged misconduct. We conclude the contours of Johnson's Fourth Amendment right to be free from excessive force at the conclusion of the confrontation were not sufficiently definite to place Sergeant Peay's conduct "beyond debate" at the time of the incident.

We therefore conclude that Sergeant Peay is entitled to qualified immunity and affirm the district court's grant of summary judgment.

## I. Background

Johnson initiated the underlying car chase when Deputy Christian Peay of the Morgan County Sheriff's Department, Sergeant Peay's brother, attempted to initiate a traffic stop due to the fact that Johnson was driving late at night without her headlights on. Johnson failed to yield to Deputy Peay, even after he activated his overhead emergency lights and siren, and led Deputy Peay on a high-speed chase lasting over half an hour. Law enforcement deployed spike strips, which flattened three of Johnson's tires. Nevertheless, she persisted in her attempt to evade arrest. Johnson did not stop even after several tires came off her truck's

wheel rims altogether. Instead, Johnson continued to flee and drive erratically; she drove off the right shoulder of the interstate, went back across both lanes, and struck the cement barrier in the middle of the divided highway. Johnson eventually exited the interstate and turned onto a rural road, but still refused to yield to Deputy Peay or any of the other law enforcement vehicles that had joined the pursuit by that time.

After she exited the interstate, Johnson stopped and began to turn her truck around to face the officers. Several law enforcement vehicles, including both Sergeant Peay's and Deputy Peay's vehicles, lined up across the road to block Johnson's westbound path. Cameras located on the dashboards of these law enforcement vehicles recorded the rest of the encounter. Sergeant Peay exited his vehicle and verbally ordered Johnson to stop and get out of her truck. Instead of stopping, Johnson began to pull forward toward Sergeant Peay's vehicle and bumped into it with her truck. She then backed up and began to pull forward again, turning and bumping into Deputy Peay's stationary vehicle with even greater force than the first collision and breaking the grill guard at the front of the vehicle. By then, Deputy Peay had also exited his vehicle but dropped out of Sergeant Peay's view. Sergeant Peay therefore did not know whether Deputy Peay was under Johnson's truck, had been struck by Johnson's truck, or if he had been pinned between the two vehicles. As Johnson's truck collided with Deputy Peay's vehicle, Sergeant Peay fired a single shot at Johnson's truck. The bullet

-3-

passed through Johnson's windshield and struck her in the head. After securing the scene, officers called for and provided immediate medical attention for Johnson. Johnson survived the gunshot but suffered serious injuries and lost the vision in her left eye.

Officers recovered a half-empty bottle of vodka at the scene, which Johnson indicated she purchased from a gas station a few hours before the incident. It was later determined that Johnson had a blood alcohol level of 0.358 at the time of the incident, more than four times the legal limit in Utah. And Johnson stated that she "had every intention of trying to kill [herself]," "want[ed] to die," and was attempting "death by cop." Supp. App. at 98, 110. In the aftermath of the incident, Johnson was cited for a variety of violations and eventually pleaded guilty to failure to respond to an officer's signal to stop (a third degree felony) and driving under the influence of alcohol or drugs (a class B misdemeanor).

Meanwhile, the Davis County Attorney's Office investigated Sergeant Peay's use of force under state law governing a "peace officer's use of deadly force." *See* Utah Code. Ann. § 76-2-404. The office determined that Sergeant Peay's "use of potentially lethal force . . . was not *necessitated* by the facts" and the shooting did "not squarely fit with the letter, scope and intent of" state and related federal law, but ultimately declined to prosecute Sergeant Peay because "a

unanimous jury would not convict Sergeant Peay of a crime when presented with all of the evidence." App. at 63–64.

Following the conclusion of the office's investigation, Johnson filed suit against Sergeant Peay in federal district court. As relevant to this appeal, Johnson claims Sergeant Peay's use of deadly force violated her clearly established Fourth Amendment right to be free from excessive force.

## II.  Analysis

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The plaintiff opposing a defendant's assertion of qualified immunity must prove both that: (1) a constitutional violation occurred; and (2) the violated right was clearly established at the time of the violation. *See id.* We have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first. *Id.* Because we conclude that Sergeant Peay did not violate a clearly established constitutional right, we "take the advice of *Pearson* and address that issue first." *Id.*

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). In other words, "[a] right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it,' meaning that 'existing precedent placed the statutory or constitutional question beyond debate.'" *City of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (alterations incorporated). This standard is relatively deferential to government officials and, in any gray area, the officer prevails: "[Q]ualified immunity protects actions in the 'hazy border between excessive and acceptable force.'" *Mullenix v. Luna*, 136 S. Ct. 305, 312 (2015) (per curiam) (citations omitted; alterations incorporated).

Moreover, the Supreme Court has repeatedly emphasized that "'clearly established law' should not be defined 'at a high level of generality'" and "must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citations omitted). "Such specificity is especially important in the Fourth Amendment context," where the Supreme Court has recognized it

-6-

may be "difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 136 S. Ct. at 308 (quoting *Saucier*, 533 U.S. at 205). When a case "presents a unique set of facts and circumstances," this quality "alone [is] an important indication . . . that [the officer's] conduct did not violate a 'clearly established' right." *See Pauly*, 137 S. Ct. at 552 (citations omitted). That is, when there is no case "where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment," it is unlikely that the officer's conduct violated "clearly established" law. *See id.*

In general, it is not "constitutionally unreasonable" for an officer to prevent a suspect's escape by using deadly force when the officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Brosseau v. Haugen*, 543 U.S. 194, 197–98 (2004) (per curiam) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Within this broad framework, however, a series of excessive force cases involving car chases reveals the "hazy legal backdrop," *Mullenix*, 136 S. Ct. at 309, against which Sergeant Peay acted. In *Brosseau*, for example, the Supreme Court reversed the Ninth Circuit's decision to withhold qualified immunity from officer Brosseau, who shot Haugen in the back as he "attempted to flee from law enforcement authorities in his vehicle." *Id.* at 194. Brosseau explained that "she shot Haugen because she was 'fearful for the other officers on foot who she believed were in

the immediate area, and for the occupied vehicles in Haugen's path and for any other citizens who might be in the area.'" *Id.* (citations omitted; alterations incorporated). By the time of Brosseau's use of deadly force, Haugen "had proven he would do almost anything to avoid capture" and "posed a major threat to, among others, the officers at the end of the street." *See id.* at 200. After summarizing the existing case law, the Court concluded it "by no means 'clearly establish[ed]' that Brosseau's conduct violated the Fourth Amendment." *Id.* at 201.

Likewise, the Supreme Court held in *Scott v. Harris*, 550 U.S. 372 (2007) that "an officer did not violate the Fourth Amendment by ramming the car of a fugitive whose reckless driving 'posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the case,'" and in *Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014), that "an officer acted reasonably when he fatally shot a fugitive who was 'intent on resuming' a chase that 'posed a deadly threat for others on the road.'" *See Mullenix*, 136 S. Ct. at 310 (alteration incorporated) (first citing *Scott*, 550 U.S. at 384; then citing *Plumhoff*, 134 S. Ct. at 2022).

And in *Mullenix* itself, the Court held that officer Mullenix, who shot fleeing suspect Leija six times from a bridge overpass, deserved qualified immunity for his actions in confronting "a reportedly intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight

had threatened to shoot police officers, and who was moments away from encountering an officer." 136 S.Ct. at 309. No cases "clearly established that deadly force [was] inappropriate in response to conduct like Leija's." *See id.* at 307, 311.

These cases require us to take a close look at the unique set of facts and circumstances facing Sergeant Peay. Johnson's injuries are undeniably tragic. And it is quite possible that Sergeant Peay overreacted. It is not our job, however, to evaluate the incident "with the 20/20 vision of hindsight" from "the peace of a judge's chambers" while leisurely watching the end of the encounter by video. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations omitted). Rather, we must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene" and our calculus "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97 (citations omitted). As the district court noted, in the sequence of events leading up to the shooting, Johnson

> showed no signs of yielding to the officers' lights and sirens during the chase, even when she had to drive on tire rims after three of her tires disintegrated from damage caused by tire spikes. And after she slowed to a stop, Ms. Johnson immediately backed up and drove straight toward the officers and the patrol cars that blocked her path. Her truck was only feet away from the officers and their cars. She deliberately ran into Sergeant Peay's car, even as he was pointing a gun at her through

-9-

>  the windshield and ordering her to stop. . . . Then she revved her engine, backed up again, turned her steering wheel, and aimed for other cars.

App. at 10–11.

In other words, at the time of Sergeant Peay's use of force, the officers "were no longer dealing with a traffic stop," but "with an unknown driver who disobeyed officers' commands to pull over and who led the officers on a thirty-minute chase" before "maneuvering . . . a big pickup truck in an aggressive way in close proximity to officers." *Id.* at 11–12. According to the undisputed record, Sergeant Peay was unaware of the precise location of Deputy Peay, not knowing whether he was "under [Johnson's] vehicle, if she had hit him, or if she was pinning him between the vehicles." Supp. App. at 79. As the Supreme Court said in *Mullenix*, it has "never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity" where an officer reasonably believed he or others were in danger. 136 S. Ct. at 310. Johnson cannot cite, and our independent review does not reveal, any case indicating that an officer's use of deadly force is constitutionally impermissible in a situation roughly analogous to the one Sergeant Peay faced here.[1]

---

[1] In support of her argument that Sergeant Peay violated her clearly established Fourth Amendment right to be free from excessive force, Johnson cites *Woodcock v. City of Bowling Green*, 165 F. Supp. 3d 563 (W.D. Ky. 2016). We are of course not bound by an out-of-circuit district court case and, in any

(continued...)

Despite this, Johnson argues the district court erred in crediting Sergeant Peay's testimony and characterization of the facts, which Johnson claims were made "objectively unbelievable" by the "clear and unambiguous dashcam video" evidence. Aplt. Br. at viii, 1–4. In doing so, Johnson maintains the district court "improperly weigh[ed] the facts and [made] credibility assessments that should properly have been decided by the trier of fact." *Id.* at ix, 26–30. Indeed, Johnson seems to contend the dashcam video evidence fully supports her view of the events and definitively rules out Sergeant Peay's characterization of the incident.

But the district court's and our review of the videos depict a lengthy saga replete with evidence of Johnson's aggressive and persistent attempts to evade arrest. This is evident even if we do not credit any of Sergeant Peay's testimony regarding Johnson's alleged expressions of rage, screams, and physical aggressiveness. Immediately prior to the shooting, the videos clearly demonstrate Johnson's willingness and ability to use her truck to hit, and thereby move, law enforcement vehicles in close proximity to several police officers. It is well-settled that vehicles may be used as weapons and that such use "may allow for the use of deadly force," because "it goes without saying that an officer in close

---

¹(...continued)
event, the case is easily distinguishable. The victim in *Woodcock* was not physically resisting arrest at a close range; he was more than seventy feet away from the officers, on foot, obviously intoxicated, and "simply passively noncompliant." *See id.* at 582–83.

quarters is no match for a two-ton vehicle." *Thomas v. Durastanti*, 607 F.3d 655, 665, 671 (10th Cir. 2010). While Johnson seems to suggest the undisputed video evidence condemns Sergeant Peay's actions, we conclude the videos instead depict a sequence of events corroborating the undisputed testimony of the officers and entitling Sergeant Peay to qualified immunity. Sergeant Peay employed deadly force that, in retrospect, may have been unnecessary. But Sergeant Peay reacted to a high-intensity situation after Johnson had: (1) led law enforcement on a lengthy car chase; (2) repeatedly failed to heed officers' warnings and commands; and (3) maneuvered her truck in a way that a reasonable police officer could have concluded she was using it as a weapon and was intent on resuming her flight, even if it meant putting officers' lives in danger.

## III.  Conclusion

Johnson cannot demonstrate a clearly established constitutional right to be free from the use of deadly force after leading law enforcement on a lengthy, high-speed chase and using her truck as a weapon in close proximity to police officers. We therefore agree with the district court that Sergeant Peay is entitled to qualified immunity and AFFIRM the grant of summary judgment.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker　　　　　　　　　　　　　　　　　　　　　　　Chris Wolpert
Clerk of Court　　　　　　　　　August 01, 2017　　　　　　　Chief Deputy Clerk

Mr. Robert B. Sykes
Ms. Rachel Louise Sykes
Ms. Alyson Carter McAllister
Robert B. Sykes & Associates
311 South State Street, Suite 240
Salt Lake City, UT 84111

**RE:　　16-4160, Johnson v. Peay, et al**
　　　　Dist/Ag docket: 1:14-CV-00147-TC

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

*Elisabeth A. Shumaker*

Elisabeth A. Shumaker
Clerk of the Court


cc:　　Chase Bennett Ames
　　　　Julia Dawn Kyte
　　　　Jeffrey D. Mann
　　　　Peter Stirba


EAS/kf